**322**

**DAYTON TOWNSHIP OF CASS COUNTY,**
Missouri, Respondent,

v.

**Samuel BROWN and E. C. Brown,**
Appellants.

**No. 54162.**

Supreme Court of Missouri,
Division No. 2.

Oct. 13, 1969.

Elvin S. Douglas, Jr., Crouch, Crouch, Spangler & Douglas, Harrisonville, for respondent.

George T. Sweitzer, Harrisonville, W. Raleigh Gough, Kansas City, for appellants.

LAURANCE M. HYDE, Special Commissioner.

Action by Dayton Township of Cass County claiming a road along the east side of defendants' land to be a Township public road and seeking to enjoin defendants from obstructing it. The court granted plaintiff the relief sought and defendants have appealed. We have jurisdiction because plaintiff is a political subdivision of the state. Art. V, Sec. 3, Const., V.A.M.S.; Liberty Township of Stoddard County v. Telford, Mo.Sup., 358 S.W.2d 842.

The trial court made the following findings: The road was graded in the 1930's, was maintained at various times since the 1930's, motor vehicles were driven over it, it was claimed by the Township Board as a segment of the Township road system and no one ever objected to its use except defendants. The road was maintained by the Township after defendants bought the land over which it is located, the Township Board instructed the road overseer to grade the road, which was done and the Township paid for it. The road was used by owners of lands north of its terminus, being their only access to these lands; it has been open for public travel since 1949 and for more than ten years there has been public

money and labor spent on it. The court determined the road was a legally establish-ed road under provisions of § 228.190, RSMo 1959, V.A.M.S. and enjoined its ob-struction by defendants.

■ Our review of this case is provided by Civil Rule 73.01(d) to be upon both the law and the evidence; and the judgment shall not be set aside unless clearly errone-ous giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. Our conclusion from the whole record is that the judgment of the trial court is not clearly erroneous, but in-stead supported by substantial evidence and we affirm.

The road began at an east-west Township road and ran north about a quarter of a mile, the south part (about 330 feet) being along the east side of defendants' ten-acre tract. Beyond plaintiff's land to the north, the road ran through land of other owners. The evidence showed it was there in the 1920's, going to a ten-acre tract on which there was a house occupied by Wade Hunt. It is not clear from the record when he left but Sam Fairbanks lived there in 1946. Ap-parently the house is no longer occupied. One witness, Mr. Sisk, went on the road to Hunt's place while taking the 1940 census. He also used the road later as a crop re-porter for ASC to measure ground; and was on the road several times while serv-ing as Township clerk from 1957 to 1963. He said "somebody was grading it" during that time and he saw a grader there.

One of the regular users of the road was Leonard Williams who farmed land north of its terminus for Mrs. Mural and Mr. Harry Matter. He had used the road for 22 years and had to cross land of Mr. Bern-er north of its terminus to get to this land he farmed. He got Mr. Berner's consent to do so but never asked consent of defend-ants to use the road. He was on the Town-ship Board in 1951 and 1952 and said the road was graded at Township expense while he was on the Board and also in 1953. Guy Cumpton, a trucker, had used the road for the last 20 years to haul corn and baled hay from the Berner place and the Mural place. He said it was passable; that he had always been able to use it; that it had been graded off and on at times; and that it had ditches before 1966, when defendants tried to close it. Other witnesses who tes-tified to the use and maintenance of the road were Earl Hodges who graded the road with horses and slips in 1926–27 and later saw it graded with a tractor; Harry Matter who was road overseer and "cat" operator for the Township eight years in the 1930's and maintained the road for the Township; and H. A. Masonbrink who was on the Township Board in the 1930's and again in the 1950's, and had used the road to bring corn out, said it was maintained by the Township from 1930 to 1958 when needed and that he had driven a car on it. The road was also used to haul out wood and by hunters.

D. M. Billinghauser, a present member of the Township Board, who had also serv-ed from 1957 to 1961 and acted as road overseer, had known the road since 1949 and said it was maintained as a Township Road, worked the same as any other road. He knew it had been open since 1949 and it was used by farmers to move their ma-chinery in there to work; Mr. Matter, Mrs. Mural and Mr. Berner own land north of it. He said there was one other dead-end road like it which was maintained by the Town-ship. ASC aerial photographs of the area taken in 1951, 1958 and 1965 show the road plainly. The east-west public road from which it starts does stand out clearer but that road had gravel on it while the road in controversy was a dirt road. To get on to the road, one had to cross a ditch about 18 inches deep along the north side of the east-west road.

Defendants bought the land involved about 1948. Their nephew, Jesse Brown, Jr., was a member of the Township Board, seven or eight years ago, for four years. During that time his uncles complained about the use of the road and he presented a letter from them about it to the Board.

In 1963 and 1964, Williams said defendants plowed the ditch out until they ruined the road. Williams said the road was about 20 feet wide from ditch to ditch but defendants plowed up about eight feet of that, leaving it so he could hardly get through. After that the Township Board had it graded and put in good shape, but in March 1966 defendants put a fence across it and this action was commenced. Defendants had evidence of nine persons who lived or had once lived in the area. Their testimony was they had never seen Township equipment on the road or evidence of maintenance or ditching and that grass grew in the middle. These witnesses designated the road as a "little path," a "private passageway," a "field lane," a "couple of tracks with grass in the middle," a "lane running up there," a "trail," a "little lane" and "a track where somebody had been in and out of there." One of defendants said that an owner of land to the north (now deceased) had asked their permission to use the road to get to his land. Defendants' witness, George Blair, had operated Township maintenance equipment part of the time between 1955 and 1963 and never took the equipment on this road. In rebuttal Mr. Billinghauser testified that from 1958 to 1960, when he was a Township trustee, work was done on the road, the ditches were opened and Blair did the work.

Defendants also showed that sometimes Township equipment was used on private lanes or driveways to accommodate landowners. Plaintiff's testimony was that this was done only on short lanes or driveways and there was supposed to be a charge for more than "half a quarter." However, the issue here is whether the road involved was a public road or a private lane.

Section 228.190 provides: "[A]ll roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads; and nonuser by the public for five years continuously of any public road shall be deemed an abandonment and vacation of the same."

Defendants' contention and argument concerning establishment of prescriptive rights is not relevant because we do not rule this case on prescriptive rights and neither did the trial court. The decisive issue is whether this road had been used by public for ten years continuously, with public money or labor expended on it during that period. In Liberty Township of Stoddard County v. Telford, Mo.Sup., 358 S.W.2d 842, we approved the following ruling made in State of Missouri ex rel. Carter County v. Lewis, Mo.App., 294 S.W.2d 954, 957: " 'To establish a public road under the quoted statutory provision, it is not necessary to prove constant expenditure of public money or labor or, for that matter, expenditure thereof "each and every year for such 10-year period" [citing cases]; but, it is sufficient to show that the expenditure of public money or labor began and "continued from time to time for the period of limitation, as (reasonably) might be considered necessary or expedient by those in authority" [citing cases], and that such expenditure was sufficient to maintain the road "in substantial repair and condition for * * * public travel." ' "

Defendants cite such cases as Sellers v. Swehla, 364 Mo. 285, 261 S.W.2d 26 (holding evidence insufficient to show a public road but remanded to try the issue of a private road by prescription); Jenkins v. German, Mo.App., 298 S.W.2d 486 (holding evidence insufficient to show a public road but affirming the judgment of the trial court finding a roadway easement by prescription) and Gover v. Cleveland, Mo.App., 299 S.W.2d 239 (holding a disputed road was not a public road). In these cases, there was lacking proof of expenditure of public money or labor for a period of ten years. Defendants say plaintiff by this action is attempting to establish "what is in reality a 'private road' without following the procedure prescribed by Sec. 228.340, and despite any real basis for a finding that the road has 'sufficient utility' for the

*public* to justify it being 'adopted' as a public road."

█ Defendants say we should not consider statements in the testimony of members of the Township Board that they claimed the road involved to be a public road and maintained it at Township expense, saying these are inadmissible conclusions. Instead we consider them to be testimony as to motive and intent. See 29 Am. Jur.2d 411, Evidence § 362; Annotation, 171 A.L.R. 683; 31A C.J.S. Evidence § 178, p. 455; Replogle v. Replogle, Mo.Sup., 350 S.W.2d 735, 737; Missouri Cafeteria v. McVey, 362 Mo. 583, 242 S.W.2d 549, 554; II Wigmore on Evidence 714, § 581. Defendants claimed the Township officers used its machinery for grading private roads and driveways as an accommodation to landowners, so it was proper for them to show the circumstances and reasons for using Township machinery on this road. We also note there was no objection to such testimony at the trial. Defendants' complaint to the Township Board when their nephew was a member shows some recognition of Township authority over it.

We fully agree with the criteria quoted in defendants' brief from 39 C.J.S. Highways § 1, p. 918, as follows: "Whether a road is public depends in a measure on the particular facts. Thus it must, of physical necessity, be so situated and connected as to be accessible to the public, but it does not depend on its length, or on the place to which it leads, or on the number of people who use it. It is enough if its use is free and common to all citizens, and that the public has actual access to it, whether by a mere neighborhood or settlement road, or by some established public highway."

█ Our view is there was sufficient substantial evidence from members of the Township Board, their road maintainers and its users to show that this road had been continuously used and maintained as a public road for at least 50 years. It never had a great amount of travel on it but for a considerable period it was the only way of access to the small farm and residence of Hunt and ended there. See Wann v. Gruner, Mo.Sup., 251 S.W.2d 57, 58; see also State ex rel. Carter County v. Lewis, Mo.App., 294 S.W.2d 954, 958 and cases cited; City of Puxico v. Harbin, Mo.Sup., 252 S.W. 393, 394; all of which involved dead-end roads. It appears that use of the road even may have increased with the use of farm machinery on the land north of it and hauling of crops from this land. Defendants say plaintiff has only asked for a public road to be established over their property and that use beyond depends on the consent of the landowner north of them, Mr. Berner. However, there is no evidence of any claim by him that the rest of the road through his land to the Hunt place was not a public road. He did permit travel across his land north of the terminus of the road for access to the Mural and Matter farms north of his land; and it appears that the present road was being extended for that purpose when defendants obstructed it in 1966. Nevertheless the real issue is whether the road involved was continuously maintained and used as a public road for ten years continuously for one-fourth mile from the east-west road from which it started and we consider the trial court properly found that it was.

█ Defendants make the further claim that the evidence does not justify the finding of a 30-foot road. The actual finding of the court was that there was a 30-foot road along the east side of defendants' property. One witness, Masonbrink, said the road was "somewhere between 25 and 30 feet." Another witness, Williams, said it was 20 feet wide "ditch to ditch." It does not seem unreasonable from the whole testimony describing the road and the ditches to find that these ditches would take up another ten feet. The witness Matter's testimony also gives some basis for this finding. Furthermore, § 229.010, RSMo 1959, V.A.M.S., requires a minimum width of 30 feet for a public road. See also Drydale v. Kiser, Mo.Sup., 413 S.W.2d 506, where a road's dimensions did not meet the statutory

standard. We consider the court's finding to be warranted by the evidence.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.