**Edgar WILSON and Pauline Wilson, Appellants,**

v.

**Ray SHERMAN, Gordon Williamson, and Ed Jennings, as Members of the Hickory County Court, and Gloria Merritt, Respondents.**

No. 10389.

Missouri Court of Appeals, Springfield District.

Nov. 6, 1978.

FLANIGAN, Judge.

This action involves a road, 20 feet wide, which runs east and west across land owned by plaintiffs Edgar Wilson and Pauline Wilson. At its western terminus the disputed road connects with a north-south public road referred to in the record as the Holly Morton road. The disputed road runs eastwardly from the Holly Morton road across the middle portion of plaintiffs' 40-acre tract. It then jogs north approximately 30 feet and turns east into land now owned by defendant Gloria Merritt. Other defendants are members of the county court of Hickory County.

In their two-count petition the plaintiffs sought a declaratory judgment defining the rights of the parties with respect to the disputed road and also sought an injunction against defendants' maintenance or use of it. The trial court, sitting without a jury, found the disputed road to be a "public roadway by virtue of § 228.190,"[1] and decreed that it was "available for use by all members of the public without interference or obstruction." It also denied injunctive relief. Plaintiffs appeal.

As their first "point relied on" plaintiffs contend that the judgment of the trial court "is wholly unsupported by any competent, credible, substantial evidence and is against the weight of the credible evidence and erroneously declares and applies the law" in three respects: (a) The disputed road "has never been maintained by the public sufficiently to keep it in substantial repair and condition for public use and travel as required by § 228.190"; (b) There was no evidence "that any of the user shown was open, adverse, notorious, continuous, uninterrupted, exclusive and hostile as against the rights of the plaintiffs"; and (c) The trial court's finding that the disputed road was maintained in substantial repair and condition for public use was "contrary to the proven physical facts."

John M. Belisle, J. D. Baker, Belisle & Baker, Osceola, for appellants.

Kerry D. Douglas, Douglas & Douglas, Bolivar, James P. Anderton, Hermitage, for respondents.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1969, V.A.M.S.

Section 228.190 reads:

"All roads in this state that have been established by any order of the county court, and have been used as public highways for a period of ten years or more, shall be deemed legally established public roads; and *all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads*; and nonuser by the public for ten years continuously of any public road shall be deemed an abandonment and vacation of the same."

■ The parties agree that the "sole issue" is whether the evidence justified the trial court in finding, on the authority of the italicized portion of the statute, that the disputed road was "a legally established road." Plaintiffs argue, in support of subpoint (a) of their first point, that the evidence is insufficient to satisfy that portion of the statute dealing with the expenditure of "public money or labor." More specifically, plaintiffs argue, the evidence "of public work and money" is "entirely too spasmodic."

The evidence shows that the disputed road was worked on or graded by various county employees using county grading equipment. The employees, each of whom worked singly, included Ray Sherman, William Kennedy, Larry Woods, and Bobby Kennedy. Sherman graded the road in 1959. William Kennedy "bladed the road" six times during the four-year period from 1965 to 1968. He also testified that his brother Bobby Kennedy graded the road in 1974. Larry Woods graded the road once between 1969 and 1973. Bobby Kennedy graded the road in 1975.

Ray Sherman also testified that the road "has always been an open road." Sherman said that was true "ever since I can remember" and he had been familiar with the road since 1959 and had farmed nearby. William Kennedy was familiar with the road from 1961 until the time of trial in 1976. "It was being maintained during those years" and "It is a passable road." There were no obstructions in it until 1975, when plaintiffs' photographs mentioned in sub-point (c) were taken.

In addition to the foregoing evidence, defendants produced the testimony of Truman Breshears who was presiding judge of the county court from 1959 through 1974. In 1959, at the request of Clyde Paxton, who then owned the land now owned by defendant Merritt, the court authorized the county motor grader operator to grade the road "when he felt it was dry enough." Breshears said that the road was graded every year and at times more than once a year from 1959 through 1974. Houston Long and Paul Mayberry were the grader operators during 1960 to 1964 and both of them were dead at the time of trial. Josie Paxton, Clyde's widow, testified that "from 1960 to 1962 we had three loads of gravel hauled in there that the county paid for and the grader graded that down."

In *Dayton Township of Cass County v. Brown*, 445 S.W.2d 322, 324 (Mo.1969), the court, in discussing that portion of § 228.190 dealing with the expenditure of public money or labor, said: " 'To establish a public road under the quoted statutory provision, it is not necessary to prove constant expenditure of public money or labor or, for that matter, expenditure thereof "each and every year for such 10-year period;" but, it is sufficient to show that the expenditure of public money or labor began and "continued from time to time for the period of limitation, as (reasonably) might be considered necessary or expedient by those in authority", and that such expenditure was sufficient to maintain the road "in substantial repair and condition for public travel." ' "

In *Liberty Township of Stoddard County v. Telford*, 358 S.W.2d 842 (Mo.1962), the court held that the evidence was sufficient to show that there had been an expenditure of public money or labor on the disputed road for a period of 10 years. The evidence was "that for the 12-year period from 1933 through 1944 there was public labor expended on the road in that the township worked thereon in 1933 and 1934 and in 1942, 1943 and 1944." The court conceded that there was a period of seven years in

the middle of the 12-year period during which there was no expenditure of public work or money. However, in holding that the evidence was sufficient to meet the statutory standard, the court took into account the fact that the road was traveled largely by hunters and fishermen and did not lead to any populous area. Maintaining the road in substantial repair for public travel, said the court, would not require the same amount or type of labor and money as would be required to keep a heavily traveled road in such repair. The court added that members of the public did in fact travel the road throughout the statutory period.

In the case at bar the evidence with regard to the expenditure of public money or labor on the disputed road for the statutory period is stronger than the evidence adduced in *Liberty Township*, supra. See also *State v. Kitchen*, 205 Mo.App. 31, 216 S.W. 981 (1919). Sub-point (a) of plaintiffs' first point has no merit.

In sub-point (b) of their first point plaintiffs assert that the evidence is insufficient to support the judgment in that there was no showing that the user of the disputed road "was open, adverse, notorious, continuous, uninterrupted, exclusive, and hostile as against the rights of the plaintiffs." Plaintiffs rely principally upon *Kelsey v. Shrewsbury*, 335 Mo. 79, 71 S.W.2d 730 (1934).

*Kelsey*, however, is distinguishable. The disputed land in *Kelsey* was located in the city of Shrewsbury. The city claimed that the disputed land was a street. Section 228.190 was not involved in *Kelsey* and indeed it could not have been because the statute "applies to public *roads*, not to streets and alleys." *Rosemann v. Adams*, 398 S.W.2d 855, 857[1] (Mo.1966).

■ Plaintiffs assert that the user must satisfy certain adjectives—open, adverse, notorious, continuous, uninterrupted, exclusive, and hostile. These adjectives are frequently employed to define the user essential to the establishment of a highway by

prescription. See 39 Am.Jur.2d Highways, Streets and Bridges, § 26, p. 421. Establishment of a public road under § 228.190 is a method separate and distinct from establishment by prescription. *Gover v. Cleveland*, 299 S.W.2d 239, 241[1] (Mo.App.1957). If the evidence is sufficient to satisfy the requirements of that portion of § 228.190 which is under consideration here, there is no need to determine whether it meets the requirements of an alternate method for establishment of a public road.[2] Cf. *Terhune v. Caton*, 487 S.W.2d 19 (Mo.1972). In *Terhune* the court was dealing with the abandonment, or third, clause of § 228.190. The court held erroneous an instruction which defined "abandoned." The preparer of the instruction followed "the well established general definition of abandon." The court, at p. 23, said: "That definition, however, is not applicable here. The submission in this case is governed by [§ 228.190]. The sole finding there required is 'nonuser by the public for five years continuously.' Upon such a finding the statute provides as a matter of law that it 'shall be deemed an abandonment and vacation' of the road. We accordingly rule that there is no requirement in this case for a finding of intention to abandon."

■ In their argument under sub-point (b) of their first point plaintiffs make a contention which is not set forth in the sub-point itself. The contention has not been preserved for appellate consideration. *Del Monte Corp. v. Stark & Son Wholesale, Inc.*, 474 S.W.2d 854, 857[3] (Mo.App.1971). Gratuitous consideration of it discloses that it too has no merit. The contention is that there was no showing of public user of the road. Plaintiffs argue that the type of user shown was insufficient to constitute public use. They make no contention that there was a failure to meet the "10 years continuously" requirement of the second clause of § 228.190.

*State v. Haworth*, 124 S.W.2d 653, 654[1] (Mo.App.1939). See also *Gover v. Cleveland*, 299 S.W.2d 239, 241[2] (Mo.App.1957) and cases there cited.

---

**2.** In a case dealing with a prior version of § 228.190 it was held that establishing a road as a public road by *prescription* requires proof of adverse user for 10 years *prior to 1887*.

"[T]he character of a road, as to whether it is public or private, is determined by the extent of the right to use it, and not by the extent to which that right is exercised [*Wallach v. Stetina*, Mo.App., 28 S.W.2d 389, 390(2); *Phelps v. Dockins*, Mo.App., 234 S.W. 1022, 1023(4)] or by the quantity of travel over it. *Gilleland v. Rutt* [63 S.W.2d 199 (Mo.App.)] supra, 63 S.W.2d at 202(8)." *Connell v. Baker*, 458 S.W.2d 573, 577[4] (Mo.App.1970).

In *Dayton Township of Cass County v. Brown*, 445 S.W.2d 322 (Mo.1969) the court said, at p. 325: " 'Whether a road is public depends in a measure on the particular facts. Thus it must, of physical necessity, be so situated and connected as to be accessible to the public, but it does not depend on its length, or on the place to which it leads, or on the number of people who use it. It is enough if its use is free and common to all citizens, and that the public has actual access to it, whether by a mere neighborhood or settlement road, or by some established public highway.' "

Each side produced several witnesses, most of whom were elderly and had been familiar with the disputed road for many years. In general the witnesses for the defendants described a more extensive use of the road than did plaintiffs' witnesses. However, *plaintiffs'* evidence disclosed the following: Occasionally plaintiff Edgar Wilson would see "someone go down the road"; prior owners of the Merritt farm used it; Perry Reno had hunted down the road and had gone down the road for the purpose of picking fruit; Reno's brother had used the road; Tommy Moore had helped Clyde Paxton haul wood down the road and had gone down the road for the purpose of getting fruit; L. G. Hacker had walked down the road, had driven it a few times in a Jeep and had been there to hunt quail; Trucey Lurten had helped plaintiff Wilson haul rock down the road using a team and wagon; Ed Jennings, a member of the county court, had inspected the road; plaintiff Pauline Wilson had seen cars go down the road.

*Defendants'* evidence included the following: Truman Breshears had used the road to hunt mushrooms, had inspected it as a member of the county court, and had used it to visit Paxton; Ray Sherman had farmed the nearby "Holly Morton place" for three years; Sherman testified, "I was right there and saw traffic going up and down that road, I saw the road all summer, practically every day—it has always been an open road, the road was used"; John Martin had used the road once or twice a week "ever since the 1950's"; Josie Paxton said that the road "was used a good bit, almost any time a vehicle wanted to come in there"; members of the Prairie Union Homemakers Club used the road every year; Ray Stephens had hauled hay on the road using a pull-type six-foot combine; big trucks hauling hay used the road.

It is a reasonable inference from the evidence that the most frequent users of the road were the owners of the land now owned by defendant Merritt and people having occasion to visit that farm. Nevertheless the evidence supports the finding that members of the public used the road for purposes other than visiting the Merritt farm. Although no two road cases are alike with respect to the nature and extent of the user, see *Dayton Township of Cass County v. Brown*, 445 S.W.2d 322, 325 (Mo.1969), *Drydale v. Kiser*, 413 S.W.2d 506 (Mo.1967), and *Gilleland v. Rutt*, 63 S.W.2d 199, 202[7, 8] (Mo.App.1933) where, under somewhat similar evidence, the user was held sufficient to constitute the road a public one.

In *Gilleland*, at p. 202 the court said:

"The fact that [the disputed road] may be a great benefit to the defendant's farm and used by him and others in getting in and out therefrom does not deprive it of its public character so long as it is open for use by the public generally, and is being used by such of the public as desire or have occasion to use it; nor is its public character affected by the fact, if it be a fact, that only a few may use it. . . . It makes no difference in this case that those who use the road may use it for the purpose of visiting defendant's farm. So long as there

are those of the public who desire to use it for that purpose, they have the right so to use it. The part of the roadway in controversy here is not within or upon defendant's farm or under his inclosure, nor has he any control over it, except as one of the public, to use it in common with others as occasion requires."

Sub-point (b) of plaintiffs' first point has no merit.

In support of sub-point (c) of their first point plaintiffs rely upon 10 photographs which, they argue, disprove the trial court's finding that the disputed road was maintained "in substantial repair and condition for public use and public travel." The trial court made no such express finding. It did find that the road had been used as such by the public for 10 years continuously and further found that for that period public money or labor was expended on it. In their argument under sub-point (c) plaintiffs rely upon the photographs to demonstrate the impropriety of the latter findings. At no time did plaintiffs claim that there had been an abandonment of the road within the terms of the third clause of § 228.190.[3]

Plaintiffs' photographs were taken in "late June or early July, 1975" and show, according to plaintiffs, "substantial weeds, grass and brush grown up in the traveled portion of the road." This court has examined plaintiffs' photographs. They also show low-hanging trees extending over the road. Defendants introduced into evidence photographs showing that in 1976 the road was substantially free of the weeds, grass and brush appearing in plaintiffs' photographs. There was also evidence that in March 1975 a county employee attempted to grade the road and was interrupted in his efforts by plaintiff Wilson who, on that occasion, told the operator to leave and also made the statement that he was going "to whip" a member of the county court. It is a reasonable inference from the evidence that some of the growth shown in plaintiffs' photographs would not have been

there had plaintiff not interfered with the grading. See the testimony of William Kennedy mentioned earlier.

In *Wann v. Gruner*, 251 S.W.2d 57 (Mo. 1952) the supreme court affirmed the finding of the trial court that a disputed road was a public road although there was evidence that tree branches extended "to the middle of and down close to the road itself" and persons using the road "had to cut those branches to get by with their automobile."

■ Plaintiffs' photographs, showing the condition of the disputed road at one time only, do not sap the other evidence of its vitality or undermine its sufficiency to sustain the finding of the trial court that the requirements of the second clause of § 228.-190 had been met. Sub-point (c) of plaintiffs' first point has no merit.

■ Plaintiffs' second point is that the trial court erred in refusing to admit into evidence plaintiffs' Exhibit 14, a map of Hickory County, Missouri, prepared by the Missouri State Highway Department. According to plaintiffs, the map shows the disputed road to be "a private road."

Plaintiffs do not contend that Exhibit 14, even if it had been admitted into evidence, would have been conclusive on the issue of the character of the disputed road as a private or public one. Plaintiffs do argue that the exhibit was admissible to impeach defendant Ray Sherman. The record is unclear as to what portions of Sherman's testimony plaintiffs intended to impeach by the use of the excluded exhibit. The argument portion of plaintiffs' brief contains no specific page reference to the attacked portions, whatever they are, of Sherman's testimony. See Rule 84.04(h). Perhaps one construction of plaintiffs' argument is that Exhibit 14, which was prepared in 1972, conflicts with Sherman's testimony to the effect that the county court, in 1959, when authorizing maintenance of the disputed road, relied upon a map "similar" to the exhibit.

---

**3.** One asserting that a public road has been abandoned has the burden of proving such

abandonment by clear and cogent proof. *State v. Lewis*, 294 S.W.2d 954, 958 (Mo.App.1956).

If Exhibit 14 was admissible, on appellate review this court must consider it. Rule 73.01 para. 3. Assuming, arguendo, that Exhibit 14 may have been admissible, it was offered for the limited purpose of impeaching Sherman and plaintiffs have failed to demonstrate its impeachment quality. Even if Exhibit 14 had been received, the decree of the trial court was supported by substantial evidence, was not against the weight of the evidence, and neither declared nor applied the law erroneously. That being so, the judgment must be affirmed. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976).

Plaintiffs' second point has no merit.

The judgment is affirmed.

All concur.