Irvin SEATON, Willa May Seaton, Walter Pauk, Lillian Pauk, Margaret Pringle and Harold Schmidt, Appellants,

v.

Dr. Royal A. WEIR, Alan McBride, Hon. Calvin Groeper, Hon. Cornelius Held, Hon. Leonard Sutton, Judges of the Warren County Court, Respondents.

No. 43402.

Missouri Court of Appeals, Eastern District, Division One.

April 6, 1982.

Motion for Rehearing and/or Transfer Denied May 14, 1982.

Application to Transfer Denied June 14, 1982.

W. W. Sleater, Sleater & Sleater, Clayton, for appellants.

W. J. Zollmann, III, Wentzville, for respondents.

CRANDALL, Judge.

Appellants, who are the trustees, caretaker and persons having an interest in the Hickory Groves Cemetery in Warren County, brought this class action against Dr. Royal A. Weir, who owned land adjacent to the "Hickory Groves Cemetery Road," Alan McBride, Charles Voshen, and three judges of the Warren County Court. Relief was sought in the form of an injunction against interfering with access to the cemetery via the road and an order declaring the road to be public and ordering the judges and their successors to maintain the road.[1] Appellants prayed, in the alternative, for an order finding that they had acquired a prescriptive easement, or a private way or easement by necessity over the road. Actual and punitive damages were additionally sought against Weir, McBride and Charles Voshen.

In a court-tried case, the trial judge issued findings of fact and conclusions of law and entered judgment for the defendants. The trial judge found, *inter alia*, that the public road in question had been abandoned by nonuser. We affirm in part and reverse in part.

Hickory Groves Cemetery has been in existence for over one hundred years. At one time access to the cemetery could be had by one of three roads, two of which have since been abandoned. This case concerns a dispute over the third road, known at one time as the Hickory Groves Cemetery Road or the "airport road." The road had been regularly maintained by the county until about 1950. It has since deteriorated but is still identifiable due to fences and bushes on either side of the 30 foot strip and some maintenance work done by one of the defendants.

The testimony indicated that 1959 was the last time anyone had driven an automobile the entire length of the road west from State Highway T to the cemetery. Later, people desiring to visit relatives buried therein would drive partway up the road, ford a creek and hike the rest of the way to the cemetery. A number of barriers were

---

1. Upon their motion, the action was dismissed as to the judges. Appellants challenge this, but we find no error. Appellants have failed to show any legal basis whereby the trial court could order the judges, in their representative capacities, to maintain the road. Furthermore, we find no merit in appellants' argument that appellants were entitled to join the judges under Rules 52.04 and 52.05.

later erected across the road causing those who wished to visit the cemetery to seek alternate routes across private property. The erection of these barriers was the catalyst of the present suit.

The first barrier was a chain bearing a no trespassing sign and logs beneath, erected across the road just west of the entrance at State Highway T by Helen Sassenrath. Her motivation was not to deprive gravesite visitors access to the cemetery but to dissuade people from coming up the road and leaving beer cans and debris. She was not joined as a defendant and has since removed the obstruction.

The second obstruction is a "gap," a barrier constructed of wire and wood and secured with a combination lock.[2] It was placed on the road one-fourth mile west of Highway T by defendant Alan McBride, the son-in-law of Dr. Weir, who did so as an agent of the doctor in 1970.

The third obstruction is of uncertain origin. It consists of a gate which at one time belonged to the cemetery and a metal stake in the middle of the roadway that anchors one of the posts. David Voshen admitted that he had placed the stake but not the gate itself. It served the purpose of keeping cattle in his Uncle Floyd's property.[3]

The final obstruction was a gap that was located between Floyd Voshen's property and the cemetery. It was constructed by Floyd around 1950. He testified that it could be opened and was installed in lieu of a permanent fence in order to allow ingress and egress to the cemetery, yet keep his cattle on his property.

■ Under Rule 73.01 the judgment of the trial court will be sustained unless there is no substantial evidence to support it,

unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Viewed by this standard, we find there is no substantial evidence to support a finding of abandonment of a public road.[4]

■ Section 228.190, RSMo 1978, provides that "nonuse by the public for five years continuously of any public road shall be deemed an abandonment and vacation of the same." In order for a public road to be vacated by abandonment, the five-year period must be a clear and entire abandonment by the public. That it is used infrequently, intermittently or rarely does not meet the standard. If used at all the road will not be deemed abandoned. The fact that only a part of the road is used or that it ends in a cul-de-sac does not constitute sufficient evidence of nonuse and abandonment. Furthermore, once a road is established as a public road, its use inures to and becomes affected by a public interest and the right to use it cannot be abandoned unless all the public concur. *Hedges v. County Court For Ray County*, 581 S.W.2d 73, 78 (Mo.App.1979); *State ex rel. Carter County v. Lewis*, 294 S.W.2d 954, 958 (Mo. App.1956).

■ One asserting abandonment of a public road must carry the burden of showing abandonment by clear and cogent proof. *Mueller v. Pittard*, 590 S.W.2d 111, 114 (Mo. App.1979). For reasons set out below we find that respondents failed to meet this burden.

It is unclear whether the road became a public one by prescription or dedication, but it clearly was a regularly maintained road prior to 1950. It had been used for at least

---

**2.** The lock was added in 1971. The combination was provided on the lock itself for those who were so informed or who were curious enough to inspect it. Dr. Weir later wrote letters to known relatives of the deceased and the trustees of the cemetery informing them of the combination.

**3.** Floyd owned property adjacent to the cemetery and the road west of Weir's. David, his nephew, rented that property at one time. Floyd's brother Charles, who was named as a

defendant, owns no property along the disputed road. Charles was dismissed from this suit, after judgment, at the request of appellants.

**4.** Appellants claim that the defendants waived abandonment by failing to plead it as an affirmative defense under Rule 55.08. Where, as here, evidence was admitted without objection, on appeal we consider the pleadings amended to conform to the evidence. *Moranz v. Schiller*, 525 S.W.2d 785, 787 (Mo.App.1975).

ten years continually and public money and labor had been expended. Section 228.190, RSMo 1978. There was testimony concerning sporadic use of the road between 1950 and 1978 by trustees, cemetery visitors, the caretaker, hunters, lovers and others. One of the trustees testified that as recently as 1978 she and her husband had driven as far as the creek and walked the rest of the way to the cemetery. While the evidence indicates the use was sporadic, the evidence of nonuse for five years is not clear and cogent.

Respondents maintain that abandonment was shown by nonuser in that no one had driven the entire length of the roadway past the creek to the cemetery in at least twenty years. Not only did respondents' own evidence show use but we find no cases stating that a road must be *driven* on, rather than walked upon in order to meet the requirement of use. They also assert "illegal" acts of lovers, trash dumpers and hunters cannot be "contorted" to constitute use by the public. To that we respond that the road was public and although the activities carried on by these people may have been illegal, the use of the road itself would be legal.

Although Alan McBride testified that he had never observed motor vehicles travel the entire length of the road, he also stated that he erected the gap in November of 1970 to "keep people from going back that had no reason to be there." He further testified that the sheriff came after several deer hunters and that a "Greyhound busload of bird hunters" had been on the road. Because the gap was not keeping the public out, he later added the lock. Respondents' evidence of nonuse was contradicted by their own witnesses with evidence of use.

While we are not insensitive to the plight of the landowners concerning the problems created by those other than cemetery visitors by their use of the road, self-help is not the solution. There is a remedy provided by § 228.110, RSMo 1978, for vacating public roads.

There was some discrepancy concerning where the road was alleged to exist and where the surveyor found it to be. This should create no problem as the parties all seem to agree where the road exists and the injunctive decree sought would act in personam. *Connell v. Baker*, 458 S.W.2d 573, 578 (Mo.App.1970).

Since we find this to be a public road that has not been abandoned, we need not address other issues raised by the appellants concerning easements. We do, however, agree with the judgment of the trial court as to damages, as no evidence of damages was presented.

The judgment of the trial court in favor of respondents on appellants' claim for damages is affirmed. The dismissal of the county judges' is affirmed. Since we hold that the road in question was erroneously found to be abandoned, we reverse and remand for the trial court to reconsider appellants' request for injunctive relief in light of this opinion.

STEWART, P. J., and STEPHAN, J., concur.