STATE of Missouri, ex rel. W. Swain PERKINS, Prosecuting Attorney of Oregon County, Missouri, Plaintiff-Appellant,

v.

A.L. TAYLOR, Jr., and Frankie Taylor, his wife, Defendants-Respondents.

No. 13128.

Missouri Court of Appeals,
Southern District,
Division Three.

Jan. 27, 1984.

Application to Transfer Denied
April 16, 1984.

Jo Beth Prewitt, Alton, for plaintiff-appellant.

Roy W. Brown, Kansas City, for defendants-respondents.

MAUS, Judge.

The defendants own a farm of 320 acres that lies along the Eleven Point River in Oregon County. The farm is located between a community known as Wilderness and the county seat of Alton. A dirt and gravel road extends in a southwesterly direction from Wilderness, enters the defendants' farm from the north and runs to the bank of the river. In 1981 the defendants built a gate and obstructed the road. The petition in this case alleges that road was a public road by reason of § 228.190. The petition sought a declaration to that effect and an injunction compelling the removal of the obstruction and enjoining the defendants from interfering with the public use of the road. As the defendants have assumed the capacity of the plaintiff, § 56.060, that question will not be considered by this court. The trial court entered judgment for the defendants. The plaintiff appeals.

While the same must be gleaned from the testimony of several witnesses, many of the ultimate facts are undisputed. A summary of the evidence follows. In the early days, as far back as the 1920's, a

country road ran from Wilderness to Alton. It crossed the defendants' farm substantially along its present route. The road crossed the river at the McFry Ford. It then meandered to Alton. The origin of the road was unexplained except by usage and maintenance. There was no evidence of a formal dedication by deed or otherwise. For many years it apparently was the principal road from Wilderness to Alton. One witness crossed the ford in a vehicle as late as 25 years ago. Another witness, 82 years old, used the road many times driving a "Model T" to Alton. In more recent times, it was crossed by people on foot, horseback and tractor. There was evidence that county maintenance extended across the ford as recently as 35 years ago. However, in more recent years, the public use of the road has been primarily for launching boats, swimming and other recreational activities on the river.

There was an abundance of evidence the road was established and maintained by public money and labor. Two witnesses recalled that residents did "work out" their poll taxes by labor on the road. Another testified to maintenance by public money for five or six years commencing in 1962. Another testified to such maintenance in 1975. A former judge of the county court, before assuming that office, had worked for the county from 1947 to 1972. He stated that during that period he regularly maintained the road with the county motor grader.

About 1940, trees were felled across a portion of the road on the defendants' farm. Defendant Frankie Taylor testified her father "cut the timber and they left the tree tops anywhere they fell." The road was thereafter rerouted by a loop that extended around the obstructed area. The loop, for approximately half of its distance, utilized a road that extended to the house and improvements on the defendants' farm. It then turned back and rejoined the original route. However, in the early 1960's, at the request of the then tenant of the premises to move the traffic away from his hog operation, the old roadbed was reopened by the county motor grader and that portion

of the road restored to its original route. The trial court found the date of this occurrence to be 1964. Thereafter, the road was used by the public and maintained by public labor or money along the original route until it was obstructed by the defendants in 1981.

Defendant Frankie Taylor testified she was raised on the farm. She owned it after the death of her father in 1944. She had lived there from about 1927 until 1938. She again lived there from 1947 to 1959. After then leaving Oregon County, she moved back to that county in 1975, although she did not live on the farm. She denied the road was a public road. She contended that in recent years it had been used with her permission. But, she did not question the existence of the road nor the essential facts concerning its use. When asked if the road had been traveled and used for many years, she replied, "Well, it had to be traveled. That was the only way we had to get across the river." When asked if she granted permission, she replied, "They always asked, my friends did; the rest of them just took over." She admitted that former County Judge Dethrow had for over 25 years occasionally graded the road. In speaking of the period after 1959, she said, "[T]hat's when they really took over and used it more for recreation than necessity."

■ As stated, the trial court entered judgment for the defendants. That judgment is to be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The applicable portion of § 228.190 provides: "[A]ll roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads; and nonuse by the public for five years continuously of any public road shall be deemed an abandonment and vacation of the same." The standards of use and maintenance to meet

the criteria of § 228.190 are well established. They have been reviewed and applied in many cases. *Seaton v. Weir*, 633 S.W.2d 212 (Mo.App.1982); *Hedges v. County Court for Ray County*, 581 S.W.2d 73 (Mo.App.1979); *Wilson v. Sherman*, 573 S.W.2d 456 (Mo.App.1978). The use need not be constant. *Wilson v. Sherman*, supra. Nor is it necessary to prove a continuous maintenance by public money or labor for each and every year during the ten-year period. It is sufficient to show that such maintenance began and continued from time to time during the ten-year period as reasonably might be considered necessary and expedient by those in authority, and that such maintenance was sufficient to keep the road in condition for public travel. *Arrington v. Loehr*, 619 S.W.2d 888 (Mo.App.1979). The maintenance required is at least to some degree dependent upon the type of use made of the road. *Wilson v. Sherman*, supra.

It is sufficient to observe that the uncontradicted evidence in this case demonstrated greater use and expenditure of public money or labor than in such cases as *Seaton v. Weir*, supra; *State ex rel. Reynolds County v. Riden*, 621 S.W.2d 366 (Mo.App. 1981); *Wilson v. Sherman*, supra. The trial court in one conclusion of law recognized this evidence. In that conclusion it declared: "The Court finds that the roadway known as County Road No. 75 was a public road established prior to 1940 by public user and the expenditure of public money or labor for a period of ten years, as provided in Missouri Revised Statutes, Section 228.190."

▌ "A road once installed as a public way, the right of the public to use it becomes vested and, absent vacation or abandonment [228.190], cannot be divested thereafter." *Osburn v. Supreme Exp. & Transfer Co.*, 590 S.W.2d 360, 366 (Mo. App.1979). "In order for a public road to be vacated by abandonment, the nonuse not only must be shown for the statutory period but such nonuse must be a clear and entire abandonment by the public. That it is used infrequently, intermittently or rarely does not meet the standard. If used at all, the road will not be deemed aban-

doned." *Hedges v. County Court for Ray County*, supra, at 78. "The fact that only part of the road is used, ... or that it ends in a cul-de-sac or dead end, ... does not constitute sufficient evidence of nonuse and abandonment. Further, once a road is established as a public road, its use inures to and becomes affected by a public interest, and the right to use it cannot be abandoned unless all the public concurs." Id. at 78. The party asserting abandonment has the burden of proof on that issue. *Seaton v. Weir*, supra. It has been said that abandonment must be established by clear and cogent proof. *Mueller v. Pittard*, 590 S.W.2d 111 (Mo.App.1979).

▌ By necessity, the judgment of the trial court is based upon a conclusion that after 1940 the public road had been abandoned. Its findings in that respect center upon the relocation of a portion of the public road in 1940 and its restoration to its original location in 1964. In referring to use after the initial relocation, the court found that "public use of this route was permitted only by the consent of the owner, whether expressed or implied." It is true one witness said, "trees fell across this road, which was a county road, so Mr. McFry would let us go up here and come down, but since then, this had been opened up and they go straight on across. But the road is still there." The defendants' construction of this testimony would establish permissive use of the alternate route. That construction is contrary to the general tenor of the testimony of this witness. It is also contrary to all other evidence in the case. That evidence was to the effect the alternate route was used and maintained in the same manner as the original route. That evidence is exemplified by the testimony of defendant Frankie Taylor, that the public just took over. It is emphasized by the finding of the court that "any use of this roadway by the general public, in the recent past, longer than ten years, has been a trespass without the consent or delegation of authority of the landowners." Of course, the use of the road under conditions that would otherwise constitute a trespass demonstrates the way was used as a public road and not permissibly.

■ Nor, can the judgment be sustained by the defendants' argument that in 1964 the tenant had no authority to grant to the county a public road over the original route. If that change in location occurred under circumstances amounting to abandonment of the public road, the burden was upon the defendants to establish those circumstances. *Seaton v. Weir,* supra; *Wilson v. Sherman,* supra. The defendants have not demonstrated this change in route was other than a relocation of a public road as in *Faulkner v. Hook,* 300 Mo. 135, 254 S.W. 48 (1923); *Hedges v. County Court for Ray County,* supra; *Berry v. St. Louis & S.F.R. Co.,* 124 Mo.App. 436, 101 S.W. 714 (1907). Further, the defendants had knowledge of this relocation. They could have resisted the same. All of the evidence was to the effect that from 1964 to 1981, the original route was used and maintained as a part of and in the same manner as the balance of the road. As stated, that use was by the public and that maintenance was with public money. This use and maintenance for that 17-year period makes further consideration of this argument unnecessary. *State ex rel. Reynolds County v. Riden,* supra.

The trial court assigned and the defendants advance several other bases to support the determination the road is not a public road. None support that conclusion. This is true of the vague evidence that in the 1930's there were unlocked gates and a cattle guard across the road. *Osburn v. Supreme Exp. & Transfer Co.,* supra; *Brown v. Redfern,* 541 S.W.2d 725 (Mo. App.1976). It is also true of the fact the defendants in more recent years maintained no trespassing signs and in 1976 erected a barrier which was torn down. This evidence reinforces the conclusion the public use of the road was not permissive. In the same vein, the fact the defendants at divers times told the County Court not to have the road graded anymore reinforces the evidence of expenditure of public labor or money.

■ The trial court found the county court "graded said roadway at various times until on or about 1978." There was evidence the grader turned around and did not grade the 60 foot portion of the road just north of and including the ford. However, contrary to the court's findings, there is no evidence the public did not use that portion of the road. The failure to grade that portion does not constitute an abandonment of the entire road. Nor does the fact the road ends at the river in a cul-de-sac. *Hedges v. County Court for Ray County,* supra.

■ In summary, the finding of the trial court the road in question was a public road is supported by the evidence. However, the judgment it was abandoned and is not a public road is not supported by the evidence and is contrary to the law. For these reasons, the judgment must be reversed. In so holding this court is not without understanding of the defendants' frustration and exasperation when their property rights are disregarded. Nothing in this opinion should be construed to determine more than the right to use the road as a public road as established under § 228.-190. This opinion does not extend to the use of adjoining private property for recreational purposes.

■ By the petition the court was asked to declare the public road was twenty feet wide. It must be noted that § 229.010 provides that public roads shall be thirty feet wide. Nonetheless, the width of a road established under the quoted portion of § 228.190 may be less than thirty feet. *Drydale v. Kiser,* 413 S.W.2d 506 (Mo.1967). A public road so established extends to the traveled portion of the way. *Drydale v. Kiser,* supra; *Osburn v. Supreme Exp. & Transfer Co.,* supra.

■ In the trial of this case, the plaintiff established the location of the public road only by testimony referring to the old road and a road shown on an A.S.C. aerial photograph. The record is replete with testimony concerning "this point here", with no further identification, and other cryptic references. The only reference to the width of the public road is that at places it is wide enough for two vehicles to

pass. If it was not for the public interest, consideration should be given to dismissal for the plaintiff's failure to present essential proof of the route and width of the public road. However, a frequently followed disposition is a reversal and a remand for a hearing upon those issues. *Burgess v. Sweet,* 662 S.W.2d 916 (Mo.App.1983); *State ex. rel. County of Shannon v. Chilton,* 626 S.W.2d 426 (Mo.1981); *Osburn v. Supreme Exp. & Transfer Co.,* supra.

Accordingly, the judgment of the trial court is reversed. The cause is remanded for a hearing for the presentation of additional evidence upon those issues. Such evidence presented by the plaintiff shall include a plat of a survey establishing the center line of the public road. At the conclusion of that hearing the trial court shall enter a judgment as supported by the evidence and not inconsistent with this opinion.

CROW, P.J., GREENE, C.J., and FLANIGAN and PREWITT, JJ., concur.