Ira E. CLAYBROOK and Golda V. Claybrook, and Andrew V. Mihalevich &
Cecolia C. Mihalevich, and David O.
Travis & Glenda G. Travis, Plaintiffs–
Appellants,

v.

Gregory E. MURPHY and Kimberly L.
Murphy, Defendants–Respondents.

No. WD 39495.

Missouri Court of Appeals,
Western District.

March 8, 1988.

John C. Slavin and Harry C. Farr, Farr
and Hickman, Kirksville, for plaintiffs-appellants.

Charles B. Adams and Debra A. Boughton, Adams & Boughton, Kirksville, for
defendants-respondents.

Before GAITAN, P.J., and TURNAGE and CLARK, JJ.

TURNAGE, Judge.

This case involves a suit brought to require the Murphys to remove gates erected on an alleged public road and on a private easement. The court found that Claybrook, Mihalevich, and Travis had acquired a prescriptive easement over the alleged public road, but that it was not a public road. The court further held that the maintenance of gates on the road and the private easement was not unreasonable. On appeal, it is contended that the evidence was sufficient to prove the existence of a public road and that the gates should be removed from both that road and the private easement. Reversed in part and remanded.

Ira Claybrook and his wife acquired title to a nine acre tract just south of Kirksville in 1954. Adjoining this nine acre tract on the east is a road thirty feet in width and a quarter mile long. Title to the road is vested in the Murphys who own an eighty acre tract south of the Claybrook tract. The road, referred to in the evidence as the north-south road, runs in the direction indicated by its description. At the north end, the road connects with a public road that runs east and west. The south terminus is a twenty foot easement belonging to Claybrook, which runs east and west across the north end of the Murphy tract and gives Claybrook access to another tract of land owned by him but separated from his nine acre tract. Immediately south of that twenty foot easement is a thirty foot easement, also on land belonging to Murphy. That easement is in favor of Mihalevich and connects the north-south road with a tract owned by Mihalevich to the west of Murphy. Travis owned a tract of ground east of Murphy and used the north-south road to some extent for access.

Mr. and Mrs. Claybrook each testified that they acquired the nine acre tract in 1954. At that time, the north-south road was open and visible, with fences and ditches along each side. Both testified that it was a public road and that they observed the public using the road, although use was confined to hunters and young people who would come out from Kirksville for parties. At that time, the road was dirt with a little gravel, but it was passable, except in wet weather. The Claybrooks both testified that the road was used as a public road from 1954 until the time of trial in March of 1987. They also testified that the road was maintained by the special road district.

The north-south road served as access to the Murphy tract. A house had been built on the Murphy tract by Gary Fisher, who owned that land for five or six years until he sold it in September of 1981 to Murphy. Fisher built a house on this tract and, in order to make the north-south road usable in all weather, paid the special road district and a private contractor to put in culverts and considerable rock.

The first dispute that appears to have arisen concerning the north-south road occurred when Fisher requested that Claybrook and Travis contribute to the expense of making the road an all-weather road. Fisher did not receive any financial assistance and placed some posts along the side of the road near its north end with a view toward erecting a gate, but the gate was not erected.

Robert Singleton testified that he worked for the special road district from 1968 to 1979. He stated that all during that time he was instructed to maintain the north-south road and that when he worked on the east-west road which ran to the north, he also worked on the north-south road in question. He stated that he worked on the north-south road at least once or twice a year. In addition to grading the road, he stated that he cleared snow from it.

Two men who had lived in the neighborhood for a number of years testified that the public used the north-south road. They also testified that this road was maintained by the special road district. Orlan Ray testified that he observed the special road district working on the road from four to six times a year.

Mr. and Mrs. Mihalevich testified that they bought their tract to the west of Murphy and used the north-south road to gain

access to their private easement across the north side of Murphy's tract. They stated that they believed the north-south road was a public road.

Gary Fisher testified to use by the public of the north-south road while he owned the Murphy tract.

Daryl Fountain testified that he had been road superintendent for the special road district for the last five years immediately prior to the trial in March of 1987. He stated that during that time he had not maintained the north-south road and he was not familiar with the road prior to his employment with the road district.

Mr. and Mrs. Murphy testified that after purchasing their land in 1981, they experienced hunters using the north-south road and parking in their yard, which would have been just off the south end of the road. They said that hunters would come in and park at all hours and that it was very disturbing to them. In addition, the Murphys were concerned about possible liability on their part because their title included the north-south road, and they stated that a number of young people used the road while riding mini bikes.

In 1983, Murphy installed a gate on the north-south road near the north end. The gate was equipped with a lock, and Murphy gave a key to the Claybrooks and Mihalevichs so that they could continue using the road, but he stated that he wanted to keep everyone else out. Murphy maintained the gate, closed and locked, for about a year, but since that time he had only closed and locked it during hunting season and on weekends when he was out of town. He stated that he had discouraged the use of the road by all people other than the Claybrooks and Mihalevichs by keeping the gate closed and locked for the year.

Fisher had erected two gates on the private easement belonging to Mihalevich that ran along the north side of his tract, which he later sold to Murphy. Mihalevich objected to the maintenance of these gates because it obstructed his freedom to use his easement. In addition, he said one gate was so heavy that his wife could not open

it. Mihalevich also objected to the gate on the north-south road.

This suit was filed in 1986 and sought a declaration that Claybrook, Mihalevich, and Travis had acquired an easement by prescription over the north-south road by adverse use and requested an injunction to prevent Murphy from maintaining the gate on that road. In the alternative, it was pleaded that the north-south road had become a public road under § 228.190, RSMo 1986, because the road had been used by the public for ten years and public money or labor had been expended on such road for that period. In addition, Mihalevich requested that Murphy be enjoined from maintaining the gates on the private easement owned by him across the north side of the Murphy tract.

The court found that Claybrook, Mihalevich, and Travis had acquired an easement by prescription across the north-south road and found that the maintenance by Murphy of the gate was not unreasonable, but that such gate could only be closed and locked no more than ten days per calendar year. The court further found that the maintenance of the gates on the Mihalevich easement was not unreasonable, but that such gates could be maintained only if they were hinged and unlocked.

The court expressly found that a public road had not been established pursuant to § 228.190 over the north-south road.

On appeal, Claybrook, Mihalevich, and Travis contend that the court erred in allowing Murphy to maintain a gate on the north-south road and to maintain gates on the Mihalevich easement, and in the alternative, they contend that the evidence shows the establishment of a public road over the north-south road under § 228.190.

■ Section 228.190 provides that a public road may be established if such road has been used by the public for ten years continuously and upon which there shall have been expended public money or labor for such period.

There is no dispute in the evidence that the north-south road had been used by the public for more than ten years continuous-

ly. Murphy did not produce any evidence that the road had not been used by the public, and in fact he was motivated to erect the gate on the north-south road because of the public use made of that road. Thus, Murphy does not contest the fact that the road was used by the public for more than ten years continuously.

Nor is there any dispute in the evidence that the road was maintained by the special road district from 1968 to 1979, a period of eleven years. This was established by the uncontradicted testimony of Singleton. In addition, there was testimony from two men living in the area and the Claybrooks that the road was maintained by the special road district.

In *Liberty Township of Stoddard County v. Telford,* 358 S.W.2d 842, 844[2, 3] (Mo.1962), the court held that it is not necessary that public money or labor be expended each year for an entire ten year period, but the evidence must show that the road has been kept in substantial repair for public use during one continuous ten year period as a result of public labor or money being expended. As stated, there is no dispute in the evidence that Singleton maintained the road while he was employed by the special road district on instructions from his supervisor. The testimony of Fountain that he had not maintained the road for the five years immediately preceding March of 1982, does not detract from the fact that the road had been established as a public road by public use and expenditures of public money because once established the road could only cease to be a public road by non-use by the public for five years continuously. Section 228.190. There was no evidence that the road had been abandoned by non-use.

The evidence as to the existence of a public road under § 228.190 was undisputed. The finding of the court that a public road had not been established is unsupported by the evidence and cannot stand. *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

The only argument advanced by Murphy against a finding that the north-south road had become established as a public road under the statute is that the public use was not adverse and the road was not used under a claim of right. The establishment of a public road under § 228.190 is completely distinct from an establishment by prescription. *Wilson v. Sherman,* 573 S.W.2d 456, 459[2] (Mo.App.1978). *Wilson* rejected the argument that the evidence must satisfy the requirement of establishment of a road by prescription when establishment is sought under the statute. All that is necessary is that the terms of the statute be met.

It follows that the court should have declared the north-south road to be a public road, established under § 228.190.[1] Since a public road is established, it naturally follows that Murphy had no right to maintain a gate across the public road.

■ There is no dispute that Mihalevich owns a forty foot easement across the north side of the Murphy tract. The grant to Mihalevich gave him the right to grade and gravel the easement, although he never did. There is nothing in the easement that specifically addresses the right to maintain a gate across the easement.

The gates on this easement were installed by Fisher in 1976 and 1977. Mihalevich stated that he had not protested the placement of these gates to either Fisher or Murphy, although he did complain that one of the gates was quite heavy. Fisher testified that he erected the gates to keep livestock out of his property.

Mihalevich stated that at one time he ran cattle on his land, but had not done that for a number of years. The use presently is confined to hunting and recreation. In 28 C.J.S. *Easements* § 98, at 781–82 (1941), the general rule is stated that unless the grant expressly provides otherwise, the owner of the servient estate may erect gates across the way, provided they are so located, constructed, and maintained as not

---

1. This holding makes it unnecessary to consider the claim that a right to use the road by pre-

scription was acquired.

to unreasonably interfere with the right of passage. The court ordered Murphy to replace the one heavy gate with a hinged gate and to maintain a similar gate at the other location. In considering whether or not a gate should be permitted, courts consider four factors: 1) the purpose for which the grant was made; 2) the intention of the parties as gleaned from the circumstances surrounding the grant; 3) the nature and situation of the property; and, 4) the manner in which the easement has been used. *Moschale v. Mock,* 591 S.W.2d 415, 421[12, 13] (Mo.App.1979). Considering the fact that Mihalevich had acquiesced in the maintenance of the gates for at least eight years prior to bringing suit, and considering the necessity of the gates to keep cattle out of the Murphy land, it cannot be said that the ruling of the court on this matter was unsupported by the evidence. There was no evidence that the maintenance of the gates unreasonably restricted Mihalevich from using the easement, especially when the heavy gate is replaced by a hinged gate. Viewed in light of the factors to be considered in such cases, the judgment allowing the gates on this private easement is proper.

The judgment declaring that a public road was not established over the north-south road and finding that Claybrook, Mihalevich, and Travis had acquired a prescriptive easement over such road is reversed.

The judgment allowing the maintenance of two hinged gates across the Mihalevich easement is affirmed. This cause is remanded to the trial court with directions to enter judgment finding that the north-south road has been established as a public road pursuant to § 228.190 and permanently enjoining Murphy and his successors in interest from maintaining a gate across the road. In all other respects the judgment is affirmed.

All concur.