## SMALL ET AL. *v.* BINFORD ET AL.

[No. 6,202. Filed January 16, 1908. Rehearing denied March 25, 1908.]

1. PLEADING.—*Complaint.—Quieting Title.—Allegations.—General. —Specific.*—A complaint to quiet title is not sufficient, which alleges plaintiffs' ownership in general terms, and that defendants have no right to the lands, which allegations are followed by specific statements showing defendant's claims which are consistent with defendants' ownership. p. 444.

2. SAME.—*Complaint.—Initial Attack on Appeal.*—A complaint stating facts sufficient to bar another action for the same cause, is sufficient, when attacked for the first time on appeal. p. 445.

3. TRIAL.—*Jury.—Injunction.*—The right of a trial by jury does not exist in suits for injunction, though the trial judge may ask the opinion of the jury as to questions of fact, the answers being advisory only. p. 445.

4. HIGHWAYS.—*User.—Vacation.*—A road used by the public for thirty years constitutes a public highway, and it can be vacated only by complete abandonment, or by a proceeding, under the statute (§6759 Burns 1901, §5032 R. S. 1881) for that purpose. p. 445.

5. SAME.—*Abandonment by Constructing New Road.*—The construction of a new highway near an old one does not abandon such old highway, especially where such abandonment would prevent egress and ingress by residents who had outlets to such old highway. p. 445.

6. SAME.—*Dedication.—New Way.—Presumptions.—Deviations.*— The use of a new road instead of the old highway, with the consent of the interested parties, constitutes the new way a public highway, dedication being presumed; and subsequent deviations because of obstructions do not affect its public character. p. 446.

7. SAME.—*Use.—Amount.*—The fact that a way is used by only a few persons does not destroy its character as a public highway. p. 446.

From Hancock Circuit Court; *Edward W. Felt,* Judge.

Suit by Penina Binford and others against Rose C. Small and others. From a decree for plaintiffs, defendants appeal. *Reversed.*

*William Ward Cook,* for appellants.

*John H. Megee* and *John H. Kiplinger,* for appellees.

ROBY, C. J.—Plaintiffs, appellees herein, brought suit against defendants, averring that the latter claim and exercise a right to enter upon and pass over their forty-seven and forty-eight-hundredths-acre tract of land, and in so doing have torn down gates and fences, and are threatening to continue the exercise of such alleged right. They pray that the defendants be enjoined from so doing. Defendants filed a cross-complaint, alleging that there is a way over plaintiffs' land, established by forty-three-years' user, and praying that their right to use the same may be set at rest, and that the plaintiffs be enjoined from interfering with their use thereof. A decree was entered for plaintiffs, a new trial granted, and the venue of the cause changed to Hancock county; where, upon trial by the court, a special finding was made and conclusions of law stated thereon, in

accordance with which a decree was entered enjoining the defendants as prayed.

The following map sufficiently shows the lands in question:

The N.E. ¼, Sec. 24, Tp. 15, R. 8.

EXPLANATION.

Ancient Road: A-G-K-O-P.    Wooden fences: B-F and D-H.
Rail fences: H-L and O-P.    Gravel-Pit: Circle I.
Partition fence: M-P.    Travel around pit: J.
Gates: M-N, B-D and D-E.    Binford House: Near J.
Hedge fence: F-Q.    Small House: Between MN and T.
Jessup House:  Between Q and R.

The Binfords and the Smalls came into possession of their respective lands prior to 1867.    Since that time a fence has been maintained between their lands (M-P), and since 1888 Small has maintained either a gate or bars at the western end of said fence (M-N).    From about 1830 to 1860 there existed a public highway from the northwest,

entering a short distance east of the northwest corner of the quarter section (A), and angling in a southeasterly direction, intersecting the half section line, being the west line of the Binford land, about twenty-five rods south of the northwest corner of said Binford land (G), and continuing south on said middle dividing line about thirty-five rods (G-K), thence angling to the southeast on the Binford land, intersecting the line dividing the Binford and the Small lands at a point (O) forty rods west of the southeast corner of said Binford land, and thence angling to the southeast over other lands to the ford at Blue river, and thence eastward one-half mile to the town of Carthage. This highway, the course of which was largely through woodland, was not fenced where it ran through the west half of the section (A-G), but on that portion of it running south on the line between the Binford and Jessup lands (G-K), a hedge was planted one rod west of the line (F-Q), and a rail fence built five feet east of the line (H-L).

In 1860 the Carthage turnpike, running on the north line of the quarter section in question, was constructed. This new thoroughfare diverted almost the entire travel from the ancient roadway just described. The part of the old roadway situated on Jessup's land (A-G) was no longer used. The Smalls, as well as the Jessups, whose residence was near the south end of their land, continued to use a part of the old roadway in going north from their residence to the Carthage turnpike, a lane, or continuation of the old roadway, being made (G-C) from the north end of the hedge fence to the pike in the same year the latter was constructed. According to the evidence this route was used upwards of twenty-five times a year by the Smalls. It was used whenever the river was high, making the ford unsafe for crossing, and when fat hogs, or other stock, were driven to market. Public use was also made of the part of the old road running along the south end of the Binford land to

the ford and thence to Carthage, and the use of the road in both directions was with the knowledge and consent of the Binfords.

The lane, or continuation of the old roadway north of the hedge fence to the pike (G-C), before mentioned, was used until about eight years ago. At that time the way was shifted by the Binfords to the east, the east fence of its former course became the west fence of its new course, and opened from the Carthage turnpike by means of a gate (D-E). Another variation of the original road or outlet (J) was caused by the digging of a gravel-pit (I) in said road at a point about twenty-five rods south of the pike. The use of the roadway was free and uninterupted until 1903, when appellees herein forbade the Smalls to enter upon said road, and caused a lock to be placed on the gate at the turnpike (D-E).

The grounds relied upon for reversal are that (1) plaintiffs' complaint does not state facts sufficient to constitute a cause of action; (2) the court erred in its conclusions of law; (3.) the court erred in overruling appellants' motion for a new trial.

Grounds for a new trial stated and argued are: (a) The court erred in refusing to submit the cause to a jury; (b) the findings and decision are not sustained by sufficient evidence.

The sufficiency of the complaint is first challenged by assignment of error. The pleading contains general averments which would make it sufficient as a complaint

1. to quiet title, but they are followed by specific and detailed averments which show that the defendants claim a way over said land, and are threatening to tear down fences and gates erected by plaintiffs to prevent the use thereof. It is specifically averred that they have no right to such way. The specific claim which the defendants are averred to make is not inconsistent with ownership.

*Parish* v. *Kaspare* (1887), 109 Ind. 586; *Nowlin* v. *Whipple* (1889), 120 Ind. 596, 598, 6 L. R. A. 159.

Therefore the complaint construed as one to quiet title would be insufficient, the general averments being cut down by the specific ones. As a complaint for an injunction, it states facts sufficient to bar another action, and the assignment cannot therefore be sustained. *Efroymson* v. *Smith* (1902), 29 Ind. App. 451; *Xenia Real Estate Co.* v. *Macy* (1897), 147 Ind. 568, 572.

The right to a trial by jury does not exist in cases of purely equitable cognizance. §418 Burns 1908, §409 R. S. 1881; *Helm* v. *First Nat. Bank* (1884), 91 Ind. 44; *Hopkins* v. *Greensburg, etc., Turnpike Co.* (1874), 46 Ind. 187. Appellants requested that the issues made upon both the complaint and the cross-complaint be "submitted to the jury on interrogatories." While it is competent for the court in the trial of an equitable cause to take the opinion of a jury on questions of fact submitted in the form of interrogatories, such finding is advisory only (§418, *supra*), and there was therefore no error in refusing so to submit such questions.

The ancient road described was a public highway, and as such can only be vacated by complete abandonment or by proceedings under the statute. §6759 Burns 1901, §5032 R. S. 1881; *State, ex rel.,* v. *Stevens* (1885), 103 Ind. 55, 53 Am. Rep. 482. The building of the new turnpike cannot be said to have worked abandonment of the old road, for the former is a new and separate highway. The dwellings of Binford and Jessup, as well as that of Small, had been built with reference to the old road. Such an abandonment would leave landowners without a way to get to or from their property. To cut off the egress and ingress of landowners is not the policy of the law, and therefore an abandonment effecting such result will not be presumed. Vacation of highways

is not favored, and the presumption is always in favor of their continuance. *Kyle* v. *Board, etc.* (1884), 94 Ind. 115, 116. After the establishment of the Carthage turnpike in 1860 the angling road across the Jessup land (A-G) was no longer traveled, but such travel was transferred to a direct line north, which has since been used with the knowledge and consent of all concerned. Subsequent deviations from the line of way as then used do not preclude the existence of the easement. Where a way across land is changed with the consent of all parties, a dedication of the new way is presumed. *Larned* v. *Larned* (1846), 11 Metc. (Mass.) 421. To effect an abandonment there must be an intention so to do. *Stokoe* v. *Singers* (1857), 8 El. & Bl. 31, 39; *Crossley* v. *Lightowler* (1867), L. R. 2 Ch. App. *478. The right to deviate from the established road on adjacent land when the highway becomes impassable is well established (*Campbell* v. *Race* [1851], 7 Cush. [Mass.] 408, 54 Am. Dec. 728; *Irwin* v. *Yeager* [1888], 74 Iowa 174), and a slight deviation on account of some obstacle, such as the gravel-pit here, will not result in the loss of a right of way. It is sufficient if the line of travel remains substantially unchanged, although at times it may deviate to avoid bad roads or obstructions. Elliott, Roads and Sts. (2d ed.), §176; *Ross* v. *Thompson* (1881), 78 Ind. 90, 95; *Howard* v. *State* (1886), 47 Ark. 431, 2 S. W. 331; *Nelson* v. *Jenkins* (1894), 42 Neb. 133, 60 N. W. 311; *Bumpus* v. *Miller* (1856), 4 Mich. *159.

The fact that the road is rarely, if ever, used by persons other than the appellants, makes it none the less a public highway. The law does not fix the number of persons who must travel upon a road to determine its existence. *Louisville, etc., R. Co.* v. *Etzler* (1892), 3 Ind. App. 562; *Baldwin* v. *Herbst* (1880), 54 Iowa 168, 171, 6 N. W. 257; *Village of Grandville* v. *Jenison* (1890), 84 Mich. 54, 47 N. W. 600. This road is used, and it is still a public way.

The facts before set out are disclosed by the special findings. It follows that the court erred in its conclusions of law. The judgment is reversed, and the cause remanded, with instructions to restate the conclusions of law as follows: (1) That the plaintiffs take nothing on their complaint; (2) that the defendants are entitled to a decree against the plaintiffs perpetually enjoining them and each of them from interfering with the use of such highway, and for further consistent proceedings.

Per Curiam.—Appellees call attention to the fact that the appellants' cross-complaint does not entitle them to the conclusion of law indicated by the mandate herein.

The mandate is therefore modified, and the court is directed to state conclusions of law: (1) That the appellees take nothing on the complaint; (2) that the appellants take nothing on the cross-complaint, and the petition for rehearing is overruled.