Gerald C. **TERHUNE** and Mary Terhune, his wife; **Richard L. Harris** and Essie Harris, his wife, (Plaintiffs) Appellants,

v.

Frank **CATON** et al., (Defendants) Respondents.

No. 56516.

Supreme Court of Missouri, Division No. 1.

Nov. 13, 1972.

**20**

Rupert G. Usrey, Eiser & Usrey, Oregon, for appellants.

Louis Kranitz, Theodore M. Kranitz, David M. Swiss, St. Joseph, for respondents.

HOLMAN, Presiding Judge.

Plaintiffs Gerald C. Terhune and Mary, his wife, and Richard L. Harris and Essie, his wife, sought to recover a total of $79,010 from defendants for damage alleged to have been done to their farms. The defendants were Frank Caton, Kenneth Caton, Hobart Black, Byron Black and Doyle Gore. Plaintiffs are owners of adjoining farms lying west of land owned or occupied by defendants. It was agreed that in 1903 and for some years thereafter a public road ran between the farms now owned by plaintiffs and those now owned by defendants. The controversy here involved arose when defendants, in July 1970, entered the area with bulldozers and other equipment and rebuilt the road in question. The basic issue at trial was whether the road at that time remained a public road, as defendants contend, or whether it had been abandoned by nonuser by the public continuously for five years, § 228.190,[1] as plaintiffs contend.

Each couple sought recovery in three counts. One count sought actual and punitive damages for the alleged bulldozing and movement of the dirt on the farm. Another count prayed for actual and punitive damages for removal of a fence on their land without giving six months' written notice. See § 537.350. The other count sought recovery of actual and punitive damages for the destruction of trees, crops, and grass on their land. A jury trial resulted in a verdict for defendants on all counts. Plaintiffs have appealed. We have jurisdiction because of the amount involved, since the appeal was taken prior to January 1, 1972, the effective date of new Article V, Section 3, of the Missouri Constitution, V.A.M.S.

At the outset we deem it advisable to state that the trial position of the parties and some of the evidence was difficult to understand. It is, however, our understanding that plaintiffs do not contend that defendants entered upon and disturbed any of the land except the 40-foot right of way that either was or had been the roadway in question. They contend that the road had been abandoned and hence either all or a part of the former right of way was their land, unencumbered by any easement, and defendants therefore had no right to disturb it by the use of machinery or other means.

The following statement of facts will suffice for a consideration of the points raised on this appeal. We will of course omit all evidence as to damages and will not endeavor to describe the many photographs and maps that were admitted and used in the examination of the witnesses. As we have indicated, there is a common boundary approximately a mile-and-a-half long running north and south between the farms of plaintiffs and defendants. Plaintiff Terhune's land lies directly north of the land of his father-in-law, plaintiff Harris, and joins the land of defendants Caton and Gore which lies to the east. The Harris land lies opposite that of defendant Black on the east.

Plaintiff Richard Harris testified that he had bought his farm in 1945 and had lived there since 1936; that the road in question was passable until 1946; that it was not used by the public after that date; that between 1946 and 1963 he made a number of efforts to get the county court to improve the road but finally gave up in 1963; that he then employed a surveyor who surveyed the east line of his land and he built a fence about a foot west of that line and also erected a gate across the south end of the roadway; that in July 1970 the defendants came on the land and tore out his fence and destroyed crops; that he had received no notice of any intention to take out the fence; that in 1963 he put two flumes in ravines that had washed across the roadway in constructing what is called a soil saver.

1. Statutory references are to RSMo 1969, V.A.M.S.

Gerald Terhune testified that he acquired his land from his father's estate in 1967; that he is 30 years old and can't remember when there was a passable road on this right of way; that in March 1970, at his suggestion, he, Mr. Caton, and Mr. Gore employed the county surveyor to run the east line of his land; that this was done and stakes were set and he then built a fence as nearly as possible on that line, although much of it was from one to three feet back to the west of the line.

Mrs. Terhune testified that she is the daughter of the Harrises; that she was raised in the vicinity and could not remember when there was a passable road on the land in question, nor could she remember any vehicles going over it.

Two judges of the county court testified for plaintiffs that the court had been requested to open the road north of the Harris house but had not done so. They both indicated that the road that was there had been abandoned, but the evidence is clear that this testimony is based on hearsay. They did, in March 1970, buy a tube, or flume, for Mr. Caton to put in a ravine that crossed the road, and delivered it to the place of installation. The flume cost $460 and was paid for by the county.

Glen Meyer testified that he had been employed by Mr. Caton to rebuild this road and had done so, for which Mr. Black, Mr. Gore, and Mr. Caton paid him $921.50. On cross-examination he testified that there was a road on this land before he did this work, but that "you had to watch where you were going" in using it.

Charles Loucks, Holt County Surveyor, testified concerning surveys he had made over this area in 1963, 1965, and 1970. He stated that the road had been traveled when he was over it in 1963; that at that time Harris told him the road had been abandoned and that he wanted his line run so he could build a fence. He stated that part of the roadway was on the land of Gore and Black but a little more than half was on Mr. Harris' land.

On behalf of the defendants, Frank Caton testified that he purchased his land from Blair Thomas; that he got possession March 1, 1970, and that his son Kenneth presently lives on the land; that he walked over the roadway in the winter of 1969 and that it was open, but that the next spring Mr. Harris had planted corn on it; that in the spring of 1970 he installed the flume which the county court had given to him.

R. E. Riddle, Jr., a civil engineer, testified from certain aerial photographs that the road was being traveled in places in October 1968.

Russell Andler testified that he was raised on a farm which joins the Caton farm and had been familiar with this roadway for 50 years; that he had been on the road about two or three years prior to the time of trial and could tell from observation that it appeared to be heavily traveled.

Walter Brown, a judge of the county court, testified that he went to the area and saw the flume put in by Mr. Caton; that he had also observed the roadway in 1967 and it was being used at that time.

It was the testimony of Blair Thomas, who had owned the Caton farm until 1970, that you could travel this road up until 1968 except in the years 1960 and 1961 when an approach to the bridge was washed out; that he had seen tracks indicating the road was being used in 1969.

Ted Elliott, who lived in the area for 20 years, testified that he had traveled both ends of the road in the year 1965.

George Keiffer testified that he was an equipment operator employed by the county, and that at the direction of his supervisor he had done some work on the road in 1965 in that he had put dirt on the flume so that Mr. Thomas could cross over it.

Hobart Black testified that he had traveled over this road all of the time until Mr. Harris put the gate up in 1963.

Plaintiffs' counts seeking recovery for damage to the land and for destruction of

corn, timber, and grass were submitted upon a required finding that the strip of land in question had not been used as a road for five years continuously prior to July 20, 1970, and that defendants had no interest, authority, or right therein. The counts relating to the removal of the fence appear to have been based on § 537.350 and directed a verdict without requiring any finding concerning nonuser. At the request of defendants the court gave Instruction No. 12 which reads as follows:

"The Court instructs the jury that even if you believe plaintiffs erected the fence in question along the east line of the road and in the public road mentioned in evidence, they will not be entitled to recover from defendants for the removal of said fence if you believe the road at said time was a public road and had not been abandoned as a public road for a period of five (5) years prior to July 20, 1970.

"The word 'abandoned' as used in these instructions is a fact made up of an intention to abandon and the external act by which the intention is carried into effect and to constitute an abandonment the burden is upon the plaintiffs to establish a relinquishment or surrender of the right to use said road as a public road for a period of five (5) years consecutively and there must be a concurrence of intention to abandon and the actual relinquishment of the property."

■ Plaintiffs contend that the giving of that instruction constituted prejudicial error and we agree. In the first place, near the beginning, the court refers to "the public road mentioned in the evidence." The basic issue in the case was whether the strip of land in question was a public road and the court there tells the jury that it was. This gives plaintiff a reasonable basis for complaint even though it may be argued that the required finding of nonuser in that and other instructions would indicate that the court used the words only as a means of describing the strip of land and not to state as a fact that it was a public road.

■ Another and perhaps more serious error in the instruction is the incorrect definition of the word "abandoned." The definition requires a finding of an intention to abandon as well as actual nonuser. By interposing a finding as to intention, the instruction adds an element to the burden of plaintiffs that is not contained in the statute. Section 228.190 simply provides that "nonuser by the public for five years continuously of any public road shall be deemed an abandonment and vacation of the same." Moreover, as a practical matter, it would be practically impossible to prove the intention to abandon of the entire public (everyone who might reasonably use the road) other than by the fact of nonuser. In preparing this instruction defendants have obviously followed the well established general definition of abandon. See Pocoke v. Peterson, 256 Mo. 501, 165 S.W. 1017. That definition, however, is not applicable here. The submission in this case is governed by the statute. The sole finding there required is "nonuser by the public for five years continuously." Upon such a finding the statute provides as a matter of law that it "shall be deemed an abandonment and vacation" of the road. We accordingly rule that there is no requirement in this case for a finding of intention to abandon.

Although not chargeable to defendants there is another error in connection with this instruction which we deem advisable to mention. This instruction and the instructions submitting the claims of plaintiffs for removal of the fence are clearly inconsistent. The plaintiffs' instructions direct a verdict for plaintiffs without requiring any finding of nonuser, while No. 12 tells the jury that plaintiffs cannot recover if the jury finds the road was a public road and had not been abandoned for a period of five years. We think plaintiffs' instructions were erroneous in failing to require a finding of nonuser for a five-year period.

■ Since Instruction No. 12 related specifically only to the claims for damages for removal of the fences, the question is presented as to whether we should reverse and remand only as to the judgments on Counts III and VI, or whether the errors would reasonably be considered as prejudicial to plaintiffs' entire case. We note that No. 12 contains the statement, "the word 'abandoned' as used in these instructions." An examination of the instructions, however, discloses that the word "abandoned" does not appear in any other instruction. The basic issue in this entire case, however, is whether this strip of land was a public road or whether it had been abandoned by nonuser for a period of five years and hence all, or a part thereof, was owned by plaintiffs unencumbered by any easement. It is also elementary that all instructions are considered together. Therefore, we cannot escape the belief that in deciding the other counts the jury likely had in mind the definition of "abandoned" set out in No. 12 which erroneously placed the burden on plaintiffs to prove an intention to abandon. Moreover, the statement in the instruction which referred to the land as "the public road mentioned in evidence" would be applicable to all of the submissions. We accordingly rule that the judgments on all counts should be reversed and the entire case remanded for a new trial.

Since we have held that the judgments must be reversed and the cause remanded we deem it unnecessary and perhaps inadvisable to decide other points briefed by plaintiffs. Two of those points complain of other instructions given at the request of defendants. Prior to another trial the court and defendants' counsel may review those instructions in the light of the attack made on them on this appeal and may make any corrections they deem advisable. Another point relates to alleged error in handling the jury when it was taken to the site to inspect the area in question, but that situation will no doubt be avoided on another trial. The remaining point is that the court erred in failing to direct a verdict for plaintiffs. We do not think it would be prudent to decide that contention because, on another trial, there may be a change in the pleadings, or in trial theory, or even in the evidence.

Reversed and remanded.

All concur.