Gerald BURRIS and Jerry Burbridge, Respondents,

v.

MERCER COUNTY, Missouri, Respondent,

Eric Stack, Chad Cain, and Lute Cain, Appellants.

No. WD 67601.

Missouri Court of Appeals, Western District.

April 1, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 27, 2008.

Justin Head, Union, MO, for Appellants.

George E. Proctor, Jr., Liberty, MO, for Respondents.

Before JOSEPH M. ELLIS, P.J., THOMAS H. NEWTON, and LISA WHITE HARDWICK, JJ.

THOMAS H. NEWTON, Judge.

**Factual and Procedural Background**

Mr. Eric Stack, Mr. Chad Cain, and Mr. Lute Cain (Appellants) appeal the trial court's decision finding that a road had not been abandoned. Appellants own land in Mercer County, Missouri, which they purchased in 2003 for hunting and recreation. To the west of Appellants' land is property owned by Mr. Gerald Burris and Mr. Jerry Burbridge (Respondents). Mr. Burbridge purchased his land in 1994, and Mr. Burris purchased his land in 2003. A road, known by several different names including River Bend Road (road), ran through Appellants' land, and led to the river. At one time a bridge crossed the river, but in the 1950s the bridge was destroyed. Without the road, Respondents' property is landlocked. Most of the witnesses testified that the road was overgrown with brush and trees. Only one of the witnesses, Mr. Kent Donelson, testified that there were no trees in the road.

Mr. Burbridge testified that he had used the road to access his land from 1994 until 2004. His use ended in 2004 when Appellants blocked access by erecting a gate across the entrance to the road. Mr. Burris requested that the county commission reopen the road. The commission informed him that he would need a petition in order for the county to expend funds to open the road. Mr. Burris also testified that he was told that if he spent the money no petition would be needed. He decided to clear the road so that he could get to his land. He hired Mr. Donelson to clear the trees from the road. They started to remove the trees and brush from the road with a bulldozer and had cleared approximately three hundred yards. One of Ap-

pellants' neighbors noticed the sound from the bulldozer. He confronted the bulldozer operator, asking him what he was doing and if he knew where the property line was located. In response, the operator contacted Mr. Donelson, and the bulldozing ceased. Shortly thereafter, Appellants retained a lawyer and filed a trespassing complaint with the sheriff's office. ·

Appellants notified Respondents of the damage to their land. Respondents initiated a declaratory judgment action against Mercer County to declare that the road was an open public road. Appellants later intervened and filed a cross-petition for trespass and damages against Respondents.

The trial court entered judgment declaring the road to be an open public road and denied Appellants' cross-claim. On appeal, Appellants argue that the road was abandoned because it had not been used for five continuous years by the public; the road was impossible to use for more than five continuous years; witnesses testimony proved that the road was abandoned by nonuse for five continuous years; the judgment was against the weight of the evidence because it disregarded Respondents' own testimony, the testimony of numerous witnesses, and the Respondents' stipulation regarding abandonment; the judgment erroneously failed to apply the five year statutory term for abandonment; and the judgment did not adequately describe the road. We affirm the judgment of the trial court.

## Standard of Review

The standard of review for a declaratory judgment action is the same as in any other court-tried case, the standard set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Harrison v. DeHeus,* 230 S.W.3d 68, 74 (Mo.App. S.D.2007). We will affirm "unless it is against the weight of the evidence, there is insufficient

evidence to support it, or it erroneously declares or applies the law." *Id.* "We accept as true the evidence and reasonable inferences therefrom in favor of the prevailing party and disregard the contrary evidence." *Id.* We defer to the credibility determinations of the trial court. *Id.* When there is conflicting evidence, we defer to the trial court, even if the conflicting evidence would support a different conclusion. *Id.* "One asserting abandonment of a public road must carry the burden of showing such abandonment by clear and cogent proof." *Faustlin v. Mathis,* 99 S.W.3d 546, 550 (Mo.App. S.D.2003) (citation and quotation marks omitted).

## Legal Analysis

" '[V]acations of highways are not favored, and . . . the presumption will always be in favor of their continuance.' " *Oetting v. Pollock,* 189 Mo.App. 263, 175 S.W. 222, 224 (1915)(quoting *Kyle v. Bd. of Comm'rs of Kosciusko, County,* 94 Ind. 115, 116 (1884)). " 'The only limitation upon the abandonment of an established public road is that it must not be done to the injury of the vested rights of abutting owners or persons similarly situated.' " *Id.* (quoting *Johnson v. Rasmus,* 237 Mo. 586, 141 S.W. 590, 591 (1911)). In *Oetting,* the court held that where abandonment will result in the deprivation of the way of ingress and egress to plaintiff's property, the road could not be abandoned. Rather, it could only be vacated by a proceeding held for that purpose, in which the plaintiffs would be allowed to appear and assert their rights. *Id.* In this case, Respondents' property will become landlocked if the road is deemed abandoned by nonuse. There has been no formal proceeding for vacation of the road, so the only basis Appellants have is abandonment by nonuse, which is inappropriate unless Respondents have acquiesced to the abandonment. Although the court in *Oetting* went

on to analyze abandonment by nonuse in that case, the rule is clearly stated that abandonment by nonuse cannot be accomplished where the public road is the only method of ingress and egress. The remainder of the opinion seems to serve only to show that the trial court's analysis of abandonment for nonuse was incorrect, because the appellate court's treatment of the abandonment issue was not needed to justify reversal.

The dissent cites two pieces of evidence from the record that indicate that Mr. Burbridge's use of the road was permissive, so he did not use the road as a public road. First, after the bulldozer was prevented from clearing the road, Mr. Burbridge encountered Mr. Stack on the property and asked for permission to use the road to get to his property. This was not until 2004, after ten years of use. Second, Mr. Burbridge testified that there had never been any problem with the previous owners accessing his land. He was then asked, "As long as you were hunting?" He replied, "Yes, as long as I was hunting." It does not say that he sought permission. Nor did he say that he had permission, just that the previous owners had never mentioned a problem with him using that portion of land to access his property. This evidence has two equally valid interpretations. First, that Mr. Burbridge used the road and never had any conversation about it with the owners. Second, that he used the road with their permission. Under our standard of review, we make reasonable inferences in favor of the judgment. Therefore, we must interpret the second piece of evidence to indicate that for ten years Mr. Burbridge used the road without obtaining permission from anyone. Thus, any permissive use began in 2004, which did not provide the requisite five years of nonuse.

Furthermore, assuming that any use prior to 2004 was not permissive, Mr. Burbridge's request for permission after the bulldozing incident does not necessarily indicate the he believed he needed permission to use the land. His request could be interpreted as seeking to diffuse a complicated and contentious issue with his neighbor during an ongoing legal dispute and not as an indication that he thought he always needed permission. Mr. Burbridge has not acquiesced to the abandonment of the road for five years because he used the road appropriately without permission until 2004, supporting the finding of public use.

**The road was used by the public for five continuous years**

◼ In their first two points, Appellants argue that the road was not in public use for five continuous years and that it was impossible for the road to have been used by the public for five continuous years. A public road can be abandoned in one of two ways: through either a formal vacation accomplished by filing a petition, section 228.110,[1] or nonuse by the public for five years continuously, section 228.190. *Hedges v. County Court for Ray County*, 581 S.W.2d 73, 77–78 (Mo.App. W.D.1979).

◼ The trial court found that the road was not abandoned, and citing *State ex rel. Perkins v. Taylor*, 666 S.W.2d 853, 856 (Mo.App. S.D.1984), the court stated:

> The question is not whether any county money or labor has been expended in a given time period, or even that the road may be impassable by all but those walking. Rather, the question to be answered is did the Defendant and/or Third-party Plaintiffs herein show a complete, clear and entire abandonment in which all the public concurs for a five year period.

1. All statutory references are to RSMo 2000 and the Cumulative Supplement 2005.

The trial court continued, stating that the Appellants did not meet their burden of proof in light of the evidence presented at trial, in particular the testimonies of Mr. Burbridge and Mr. Donelson, which the trial court found to be credible. Mr. Burbridge testified that he had used the road to reach his land from 1994 until 2004 when he was denied access. Mr. Donelson testified that the road was maintained and used by him when he farmed ground near this road in the late 1980s. Furthermore, county minutes reflected that there was uncertainty about whether the road had been abandoned, which conflicted with the testimony of many county officials that the road had been abandoned. The trial court noted that although many county officials stated that the road was abandoned, their testimony indicated that their use of the term abandoned did not conform to the legal definition. While there was evidence that contradicted Mr. Donelson and Mr. Burbridge, the trial court specifically found that their testimony was credible, rather than the contradictory testimony.

Appellants rely on statements made by Mr. Burbridge that his property is landlocked, that the road had not been maintained for over five years, and that he could not have driven a four wheel drive truck down the road. This reliance is misplaced and misconstrues the testimony. Mr. Burbridge was asked if any part of his property was not landlocked, to which he replied that the land in question was landlocked. However, in subsequent testimony, he indicated that there was a road leading to the land, which he used and claimed was a public road.

▮ Whether the road was maintained is relevant but not determinative of whether the road was used by the public. *See Perkins,* 666 S.W.2d at 856. The dissent discusses the lack of maintenance by the county on the road to support a finding of abandonment. However, the statute only requires maintenance to establish a public road. § 228.190.1. The abandonment of a public road is exclusively determined by use according to the statute. *Id.* While some cases have considered whether there was maintenance, if there was any use by the public, they often have confused opinions, which seem to conflate the issue of establishing county roads and abandoning them. *See Kleeman v. Kingsley,* 167 S.W.3d 198, 204, 206 (Mo.App. S.D.2005)(although the court mentioned testimony establishing that no public moneys had been expended on maintenance of the road, the judgment of the court that abandonment had been established only referred to nonuse); *Ankrom v. Roberts,* 126 S.W.3d 798, 802 (Mo.App. S.D. 2004)(the only mention of maintenance is in regard to whether the road was established as a county road); *Faustlin,* 99 S.W.3d at 549–50, 551 (maintenance established that road was a county road; evidence of maintenance also supported finding that road was not abandoned); *Taylor,* 666 S.W.2d at 855–56, 857 (maintenance established that road was a public county road; evidence against abandonment included use and maintenance of the road before an alternate road was created). In *Seaton v. Weir,* the road had been used and maintained to about 1950. 633 S.W.2d 212, 213 (Mo.App. E.D.1982). There was no evidence of maintenance after the early 1950s, but there was evidence of sporadic use up until the time of trial. *Id.* at 214–15. The court found that the road was not abandoned because there was sporadic use of the road. *Id.* at 215. Thus, the fact that the road was not maintained is not determinative in this case because there is evidence of sporadic use, and nonuse for five years is the only determinative factor in abandonment cases. Although Mr. Burbridge said he "wasn't driving a four-wheel-drive truck down it," he had walked and driven a four-wheel ATV on the road.

So while he indicates he could not drive a larger vehicle, he could walk or drive a smaller vehicle on the road, which supports a finding of use.

Furthermore, although Mr. Donelson testified that there were no trees in the road when he went to clear the road, the trial court apparently disbelieved his assessment. " 'The trial court is free to believe or disbelieve all, part, or none of the testimony of any witness.' " *Cuda v. Keller*, 236 S.W.3d 87, 91 (Mo.App. W.D.2007)(quoting *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989)). The trial court found that it was a public road and that removal of trees from the road did not constitute trespass because the trees could not belong to Appellants. Therefore, the trial court found Mr. Donelson credible on the issue of farming and maintaining the road in the past but not in regard to whether there were trees in the road.

█ The dissent argues that there was no use by the "public" because there was only evidence that the Respondents used the road. Missouri courts have discussed and defined public use of roads. " 'That [a public road] is used infrequently, intermittently or rarely does not meet the standard [of abandonment]. If used at all, the road will not be deemed abandoned.' " *Taylor*, 666 S.W.2d at 856 (quoting *Hedges*, 581 S.W.2d at 78 (Mo.App.1979)). *See also Oetting*, 175 S.W. at 224. " 'The fact that the road is rarely, *if ever*, used by persons other than the appellants, makes it none the less a public highway.' " *Oetting*, 175 S.W. at 224 (quoting *Small v. Binford*, 41 Ind.App. 440, 83 N.E. 507, 510 (1908)) (emphasis added). This indicates that a use by Mr. Burbridge alone is sufficient to meet the use requirement.

█ The dissent cites *Kleeman* for the proposition that we look at the use of neighbors and the public at large to determine whether a road has been abandoned.

Although we do look at the public at large, " '[t]he right to use a public road cannot be surrendered or abandoned unless all of the public concur therein.' " *Kleeman* 167 S.W.3d at 203 (quoting *Chapman v. Lavy*, 20 S.W.3d 610, 613 (Mo.App. E.D.2000)). " 'The law does not fix the number of persons who must travel upon a road to determine its existence.' " *Oetting*, 175 S.W. at 224 (quoting *Small*, 83 N.E. at 510). Thus if even one member of the public, e.g. Mr. Burbridge, does not concur in its abandonment and uses the road, it is not abandoned. Mr. Burbridge used the road; therefore, the whole public did not abandon it. This point is denied.

### The road was not rendered impossible to use for five continuous years by the presence of trees and brush

In their second point, Appellants argue that the law was incorrectly applied because there were trees and brush growing in the road. In *Ankrom v. Roberts*, the court found that "timber was growing in the alleged public road, that fences and debris obstructed the road, and that the public had not used the road for a continuous period of five years." 126 S.W.3d at 802. In *Kleeman v. Kingsley*, the trial court had found that the area was nearly impassable by foot or horse, trees up to fifteen inches in diameter had grown there, and the road was covered in brush. 167 S.W.3d at 204. The trial court found this testimony credible, and the appellate court found that trial court's decision was sufficiently supported. *Id.* at 204–05.

In both of these cases the fact that there were trees in the roadway was a contributing factor to finding that the road was abandoned. However, trees in a roadway do not necessarily mean that the road has been abandoned, particularly when there is evidence that the public has used the road. Furthermore, in *Ankrom* there were other

contributing factors to the impassability, and in *Kleeman* the growth was so bad it was nearly impassable even on foot. That is not the case here, where Mr. Burris had used the road both on foot and in an all-terrain vehicle to reach his property. Thus, the road was not impossible to use due to the trees and brush. This point is denied.

**The witnesses all testified that there were trees growing in the roadway but this does not require a finding of abandonment**

In addition to the two cases cited in the previous point, Appellants claim that the Western District stated that a road was abandoned which had trees, brush, and grass growing in it. *Corbin v. Galloway*, 382 S.W.2d 827, 829 (Mo.App.1964). The issue in this case however, was not whether the road had been abandoned; all parties agreed that it had been. *Id.* Rather the issue was reversion of the former right of way and damages for conversion of hedge for fence posts. *Id.* at 831–32. This court did not find that the road had been abandoned because it had trees and brush growing in it. Instead, this comment was merely a description of the condition of the former right-of-way, which each of the parties agreed to have been abandoned before it was cleared. *See id.* at 828–29.

This argument is an extension of the previous point as all the witnesses testified about the number and size of the trees. This testimony is not enough on its own to show that the road was impassable or that it was not used. Furthermore, the key is whether the public had used the road, not whether it was impossible for certain uses by the public. This point is denied.

**The trial court did not incorrectly disregard Respondents' witnesses or stipulation regarding abandonment**

Appellants argue that the trial court's judgment was against the weight of the evidence because so many witnesses testified that the road had been abandoned. Many Mercer County officials and local individuals did testify that the road had been abandoned. However, 'abandoned' is a statutorily defined concept with a distinct legal meaning, which may not conform to a county official's or local resident's understanding of the colloquial meaning of abandoned. The trial court points to this in a footnote in its judgment in which the court states that the terms "abandoned" and "vacated" have been misused throughout the trial. Thus, the trial court found that the terms as the witnesses used them were not the same as the statutorily defined meaning, and, therefore, the weight of the evidence regarding their testimony that the road was abandoned is not substantial in determining whether the road was abandoned.

Appellants also argue that it was stipulated by the county and Respondents that the road was abandoned. The trial court's judgment stated that the stipulation signed by both parties reflected the agreement by the parties as to what the county would have argued. The signed stipulation filed June 22, 2006, stipulates that the road was a public road, which had not formally been closed. The stipulation further stated that the county was claiming that the road had been abandoned for at least five years. This is not an agreement to the proposition that the road had been abandoned; Respondents merely agreed that the county was claiming that the road was abandoned. This point is denied.

**The trial court correctly applied the five-year term**

Appellants claim that the only evidence of use was in the late 1980s by Mr. Donelson and after 1994 by Mr. Burris. But because the bridge had collapsed in the 1950s, the road had been abandoned long

before this use, and there was no evidence of use during those times.

■ However, this is an improper shift in the burden of proof. "One asserting abandonment of a public road must carry the burden of showing such abandonment by clear and cogent proof." *Faustlin*, 99 S.W.3d at 551 (citation and quotation marks omitted). This is a difficult standard for a party to meet. *Id.* Therefore, Appellants were required to show a period of five continuous years in which the road had not been used. Merely stating that the bridge had been destroyed in the 1950s is not clear and cogent evidence of abandonment. Thereafter, the evidence focused on the age of the trees. Aside from the diameter of the trees, the only evidence is that some of them were at least five years old. Mr. Burbridge's use since 1994 means that if the evidence of the age of the trees were enough, they would have to be at least ten years old. Such evidence was not presented. The diameter of the trees is no help without testimony about the type of tree and its approximate age based on its diameter. This point is denied.

## The lack of a legal description in the judgment was not an error

■ Appellants claim that the judgment contained no legal description and, therefore, that the judgment should be reversed. Although a judgment regarding real property should contain the location of the real property in question, and the judgment did not contain a legal description, the judgment was nevertheless sufficient for this purpose. Courts in this state have held that although property should be precisely defined, the degree of precision is different for different types of cases. *Allen v. Smith*, 375 S.W.2d 874, 882–83 (Mo.App.1964). Less detail is required to describe and define the route of a country road or way of access across a farm than the description of a driveway easement between two city lots. *Id.* at 883.

In this case three exhibits, each of which marked the location of the old road, were entered at trial without objection. Additionally, the road is still shown on county maps and aerials. Thus, the location of the road was defined sufficiently for the purposes of the judgment as the location set forth in the exhibits. This point is denied.

For the foregoing reasons the judgment of the trial court is affirmed.

THOMAS NEWTON, Judge, writes for the majority.

VICTOR HOWARD, Chief Judge, HAROLD LOWENSTEIN, JAMES SMART, RONALD HOLLIGER, LISA WHITE HARDWICK, JAMES WELSH, and ALOK AHUJA, Judges, concur.

JOSEPH ELLIS, Judge, writes for the dissent.

PAUL SPINDEN and JOSEPH DANDURAND, Judges, concur.

## DISSENTING OPINION

JOSEPH M. ELLIS, Judge.

I respectfully dissent from the majority's holding that the road was abandoned pursuant to § 228.190 because I believe the evidence establishes that the road had not been used by "the public" for a continuous period of at least five years.

Eric Stack, Chad Cain, and Lute Cain (together, "Appellants") appeal the trial court's judgment declaring that a public road lying partly on their property had not been abandoned and denying their claims for trespass against Gerald Burris and Jerry Burbridge (together, "Respondents").

Appellants jointly purchased a tract of land located in Washington Township in Mercer County, Missouri, in March 2003. Although the previous owners had done some logging on the land, Appellants planned to use it for farming and recreation, including hunting. Respondent Burbridge owns the tract immediately to the west of Appellants' land; he purchased his land in 1994 and used it for hunting purposes. Respondent Burris purchased the parcel to the west of Burbridge's several months after Appellants purchased their land in 2003; he planned to use it for logging purposes.

Respondents' tracts are both landlocked. There is a road running east to west for a short distance on Appellants' northern property line. When Appellants purchased their land, the road was graveled up to the point where it ran into a field and a wooded area on their property. In the past, the road extended over a bridge crossing the Grand River on the western edge of Appellants' property, but the bridge was washed away or removed in the 1950s. After the bridge was destroyed, the road became overgrown with trees and underbrush, but it was never officially closed.

Prior to purchasing his land in late 2003, Burris ascertained that the road on Appellant's property appeared on certain County maps and had not been officially closed, but he did not physically examine the road. He negotiated with neighboring property owners for easements from the point where the road dead-ends at Burbridge's property line. After he purchased the land, Burris discovered that the road was overgrown with trees and brush and "wasn't being used." Burris contacted the Mercer County Commission and asked them to "reopen" the road, but he was informed that he would need to file a formal petition.

Burris did not want to wait for the formal petitioning process. Instead, he hired Kent Donelson to clear out the trees and brush on the road. Burris did not speak to any of the appellants or inform them of his plans, and Donelson began bulldozing the area in the summer of 2004. Appellants learned of the bulldozing from neighboring property owners. While Donelson was bulldozing, one of the neighboring property owners, Mrs. Smith, came over and objected, claiming that the road had been abandoned. Donelson stopped what he was doing and contacted Burris. He had removed 60 to 100 trees from and around the road, clearing an area approximately 300 yards long by 40 to 50 feet wide.

Burris subsequently had one or two meetings with the Commission and the Smiths; Appellants were not present at this or any of the other Commission meetings concerning this matter. The Commission told Burris that the road had been abandoned and that he had not been authorized to clear the road.

Although Burbridge was not involved in the bulldozing and was not at any of the meetings with the Commission, he also wanted the County to take action concerning the road. In the past, Burbridge had driven his four-wheeler across that area of Appellants' property to hunt on his property. At some point, Appellants erected a gate at the end of the graveled portion of the road where it went into the field and woods,[1] and Burbridge was no longer able to travel across Appellants' property after the bulldozing occurred.

On January 31, 2005, Respondents initiated a declaratory judgment action against

1. There is conflicting evidence as to when the gate was erected, either before or after the bulldozing occurred, and the trial court did not make any findings concerning this issue.

Mercer County, requesting the court to declare the road on Appellants' property to be a public road and to order the County to "completely open and maintain" the road to provide access to Respondents' property. In response, the County asserted, among other things, that the road had been abandoned by nonuse pursuant to § 228.190. Appellants subsequently intervened and filed a cross-petition against Respondents, also alleging that the road had been abandoned and seeking damages for trespass. Respondents denied that the road had been abandoned and filed a cross-claim against Appellants, alleging that they had blocked a public road and thereby wrongfully prohibited access to Respondents' property.

The trial court heard evidence on May 23 and 24, 2006, and took all matters under advisement. On June 22, 2006, Respondents and the County filed a written stipulation stating, in pertinent part, that the parties "stipulate that the road in question is a public road and it has not been officially closed by the County. The County claims the road has been abandoned for more than five years."

The court subsequently entered its judgment declaring that the road was a public road owned by the County and had not been abandoned pursuant to § 228.190.[2] The court found that it had no jurisdiction to order the County to open or maintain the road because the road was located within Washington Township and the Township was not a party to the action. The court also found that Appellants were not entitled to damages for trespass or otherwise because, since the road had not been abandoned, Appellants had no ownership of the land on which the road was located or the trees that had been removed or damaged. Finally, the court found that Respondents had not presented sufficient evidence to support their counterclaims

against Appellants. Accordingly, the court entered judgment in favor of Respondents against the County and denied Appellants' and Respondents' claims against each other. This appeal follows.

"Our standard of review in declaratory judgment cases is the same as in any other court-tried case. We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Inman v. Mo. Dep't of Corrections*, 139 S.W.3d 180, 183 (Mo.App. W.D.2004). We review questions of law de novo and "give no deference to the trial court's judgment in such matters." *Commerce Bank, N.A. v. Blasdel*, 141 S.W.3d 434, 442 (Mo.App. W.D. 2004) (internal quotation omitted). "However, we must give 'due regard to the opportunity of the trial court to have judged the credibility of witnesses.'" *Id.* (quoting *Rule* 84.13(d)(2)). This Court is "bound to 'exercise the power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" with caution and with a firm belief that the decree or judgment is wrong.'" *Id.* (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

Appellants bring six points on appeal. The first five points concern the trial court's interpretation and application of § 228.190. In Points I, II, and III, Appellants assert that there was no substantial evidence to support the court's judgment and that the court erred in not finding that the road had not been used by the public. They argue that the evidence reflects that the road had not been maintained for a continuous period of at least five years and was impassable due to obstruction by timber and brush. In Point IV, Appellants contend that the judgment is against the weight of the evidence because the court

---

**2.** All statutory citations are to RSMo 2000     unless otherwise noted.

disregarded Respondents' testimony, the testimony of numerous witnesses, and Respondents' stipulation of abandonment. In Point V, Appellants argue that the court incorrectly interpreted the five-year period in § 228.190, asserting that abandonment occurs where there is nonuse for any continuous five year span, not necessarily the five years immediately before trial.

Section 228.190 provides:

All roads in this state that have been established by any order of the county commission, and have been used as public highways for a period of ten years or more, shall be deemed legally established public roads; and all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads; and nonuse by the public for five years continuously of any public road shall be deemed an abandonment and vacation of the same.

"The essential and basic issue presented by proceedings under Section 228.190 is one of fact, i.e. whether there has been a nonuser by the public of a road for five ... years continuously. If that is shown, it 'shall be deemed an abandonment.' " *Hedges v. County Court for Ray County*, 581 S.W.2d 73, 78 (Mo.App. W.D.1979) (quoting *Terhune v. Caton*, 487 S.W.2d 19, 23 (Mo.1972)). "One asserting abandonment of a public road must carry the burden of showing such abandonment by clear and cogent proof." *Chapman v. Lavy*, 20 S.W.3d 610, 613–14 (Mo.App. E.D.2000).

In holding that the road on Appellants' property had not been abandoned, the trial court relied on *State ex rel. Perkins v. Taylor*, 666 S.W.2d 853 (Mo.App. S.D. 1984), which summarized the law concerning abandonment as follows:

"In order for a public road to be vacated by abandonment, the nonuse not only

must be shown for the statutory period but such nonuse must be a clear and entire abandonment by the public. That it is used infrequently, intermittently or rarely does not meet the standard. If used at all, the road will not be deemed abandoned. The fact that only part of the road is used, ... or that it ends in a cul-de-sac or dead end, ... does not constitute sufficient evidence of nonuse and abandonment. Further, once a road is established as a public road, its use inures to and becomes affected by a public interest, and the right to use it cannot be abandoned unless all the public concurs."

*Id.* at 856 (quoting *Hedges*, 581 S.W.2d at 78, internal citation omitted).

The court noted that the County stipulated that the road was a "public road" at one time and stated:

[T]he question is not whether any county money or labor has been expended in a given time period, or even that the road may be impassible by all but those walking. Rather the question to be answered is did the [County] and/or [Appellants] show a complete, clear and entire abandonment in which all the public concurs for a five year period.

The court then stated that Appellants and the County had not met their burden of proof "based on the evidence adduced at trial, specifically the testimony of Jerry Burbridge and Kent Donelson, whom the [c]ourt found credible." The court relied on Burbridge's testimony that he used the roadway to access his property by four-wheeler for hunting purposes starting in 1994 and on Donelson's testimony that the road was maintained and that he used it when he farmed near the road in the late 1980s. The court also noted that the Commission's minutes from one of the meetings with Burris stated that "the question

is not quite clear whether or not the road has been abandoned."

I first note, as does the majority, that Appellants incorrectly state that the County stipulated to abandonment; the stipulation merely stated that the County *claimed* the road had been abandoned. The majority also correctly notes that, although numerous witnesses testified that the road was "abandoned," abandonment is a legal concept which must be determined on a case-by-case basis and may not conform to the familiar understanding of the term. *Hedges*, 581 S.W.2d at 78. Accordingly, the fact that the Commission's minutes reflect that the County was uncertain as to whether it was abandoned does not preclude a finding of abandonment. The need for case-by-case analysis is particularly evident in the case at bar because several witnesses testified that the County frequently does not know whether a road has been abandoned because that is completely up to the township.[3] Witnesses also testified that the fact that the road still appears on certain maps does not necessarily mean that it has not been abandoned.[4] Indeed, although there is a road sign that appears to be for 911 purposes, its official name is unknown and, as the trial court noted, it is referred to by at least four different names.

Before analyzing the record in detail, I must first address the majority's summary assertion that abandonment of the road by nonuse did not occur in the case at bar because Respondents' property would have "become landlocked," in that they would have been deprived of "the way of ingress and egress to [their] property," and Respondents have not "acquiesced to the abandonment." *Maj.* at 201–02. The majority relies on *Oetting v. Pollock*, 189 Mo.App. 263, 175 S.W. 222, 224 (1915), for the proposition that, under such circumstances, a public road cannot be abandoned by nonuse and may only be vacated by a formal proceeding at which Respondents are allowed to assert their rights. *Maj.* at 201. The majority overstates the holding of *Oetting*.

The *Oetting* court did make the general pronouncement cited by the majority as to the facts in that case and stated that " '[t]he only limitation upon the abandonment of an established public road is that it must not be done to the injury of the vested rights of abutting owners.' " 175 S.W. at 224 (quoting *Johnson v. Rasmus*, 237 Mo. 586, 141 S.W. 590 (1911)). However, the court then stated that "a highway may cease to exist either by abandonment or by vacation according to law" and proceeded to examine whether there was sufficient evidence of nonuse by the public to

---

**3.** Robert Jones, a Mercer County Commissioner from 1995 to 2004; Rudy Finney, a Commissioner from 2000 to 2004; and Clifford Shipley, a Commissioner for eight years, all testified that the townships are responsible for keeping track of which roads have been abandoned and that the Commission doesn't always know about the abandonments. Rudy Finney also stated that a road is not necessarily a "public use road" or maintained or used even if the County declares the road to be public.

**4.** The Mercy County Assessor testified that roads frequently appear on assessor's maps even though they are overgrown and appear

as though they have not been used for many years. Rudy Finney stated that, from his knowledge as a Harrison Township board member for the past 16 years, abandoned roads would not be listed as "open" on maps but may appear on an assessor's map. Clifford Shipley stated that it is not uncommon for roads to be on an assessor's map even though they are not being used and no money has been spent on them. Kenneth Wilson, a Mercer County Commissioner since 2005 who was also on the Morgan Township and worked for the Missouri Highway Department, testified that abandoned township roads may appear on maps.

show abandonment. *Id.* (internal quotation omitted). The court noted that the trial court's only finding on non-use was that the road "had not been traveled by the public generally to any extent for the last 15 or 20 years." *Id.* The court observed that this finding could "only mean that the extent of the travel by the public was limited," *id.*, and that the trial court "did not find that the public generally had entirely ceased to travel this road." *Id.* For this reason, and this reason only, the court held that Ms. Pollock, the defendant, had "utterly failed to carry the burden cast upon her of establishing an abandonment of this public road, and that the trial court clearly erred in its judgment." *Id.*

Thus, *Oetting* does not hold that abandonment by non-use can never occur if a result of such abandonment would be that a parcel of land would become landlocked. Rather, *Oetting* emphatically holds that abandonment by non-use can occur in those circumstances. Therefore, it is necessary to examine the evidence concerning public use to determine whether abandonment by non-use was established in this case.

As the majority observes, the trial court correctly stated that the proper focus in cases of abandonment is on whether the public has used the road. *See Hedges,* 581 S.W.2d at 78; *Taylor,* 666 S.W.2d at 856. However, prior cases addressing whether an overgrown road has been abandoned have still considered whether there had been any maintenance, either public or private, or expenditure of public funds. *See Kleeman v. Kingsley,* 167 S.W.3d 198, 204 (Mo.App. S.D.2005); *Ankrom v. Roberts,* 126 S.W.3d 798, 802 (Mo.App. S.D. 2004); *Faustlin v. Mathis,* 99 S.W.3d 546, 551 (Mo.App. S.D.2003); *Taylor,* 666 S.W.2d at 857; *Seaton v. Weir,* 633 S.W.2d 212, 213–15 (Mo.App. E.D.1982). I agree with the majority that "the fact that the road was not maintained is not determina-

tive in this case" and "nonuse for five years is the only determinative factor in abandonment cases." *Maj.* at 203–04. However, evidence of lack of maintenance is clearly probative in determining whether a road has been abandoned in cases where the road is allegedly overgrown.

In the case at bar, many witnesses testified that the road on Appellants' property was not maintained past the point where Appellants erected a gate, which is where the bulldozing occurred. Respondent Burris testified that the road appeared to have been maintained to where it went into the field on Appellants' property but that, to the best of his knowledge, the road was not maintained past that point, including in the area that he had cleared out. He stated that the road was overgrown with small trees and underbrush but that he probably could have driven a four-wheeler over all of the growth. Jack Smith, a neighboring landowner since 1982 who was a trustee for Washington Township for two years in the mid–1990s and had been on the Township's zoning board since 1991, and Mel Merrill, a trustee for Washington Township since 1999 or 2000, also testified that the road was not maintained past the gate. Even Respondents' expert, Ronald Lumb, testified that "[t]he area was a unmanaged [*sic*] timber stand" and that it "had been logged previously and that would be it."

Much of the questioning at trial focused on maintenance in the five years immediately preceding the trial. Donelson testified that the road past the gate did not appear to have been maintained recently or in the past five years and that the roads and brush probably had been there for at least five years. Both Respondents' and Appellants' experts also testified that most of the trees had been there for more than five years. Robert Jones, a Mercer County Commissioner from 1995 to 2004; Rudy

Finney, one of the Commissioners who met with Burris; and Carolyn Kost, the County Clerk, testified that there had been no public funds or maintenance on the road in the five years before trial or before Burris approached the Commission.

There was also substantial evidence to show that there had been no maintenance or expenditure of public funds for much longer than five years. As noted above, Donelson testified that the road "was always maintained when [he] farmed in there" in the late 1980s, and the court found this testimony credible. However, Willie Girdner, who lived on one of the neighboring farms for his whole life of 31 years, testified that, although he could tell there had once been a road past the gate, he could not remember a road ever having been there. He also stated that he had never seen any maintenance done by the County or Township on that part of the road. Jack Smith testified that he had never seen any public maintenance on the road since he moved back in 1982, stating, "It would be impossible since it—thick with timber at that time." He further stated, "That was grown up in timber. I would say timber at least 30 feet high. You know, ever since I can remember." Respondent Burbridge testified that it did not appear that the road had been maintained or had any public funds spent on it either in 1994 or at any time since then.

Representatives of the County and the Township also testified that there had been no public funds or maintenance expended on the road for some time. Smith testified that he never authorized or knew of any expenditures or maintenance on the road during his time as a trustee on the zoning board of Washington Township, or since 1991. Mel Merrill confirmed this testimony, stating that Washington Township was responsible for maintaining the road and that he was unable to find any records of maintenance by them for the past twenty years. He further stated that he personally "[didn't] imagine the road has been maintained since the bridge went out" in the 1950s and that he was not aware of any public expenditures since he moved back to Mercer County in 1996. Rudy Finney testified that he inquired of the Township whether any expenditures had been made on the road and determined that "they had never spent no money on it." Kenneth Wilson, a Mercer County Commissioner since 2005, responded negatively when asked whether he was "able to ascertain if there had been any records of any maintenance done within the past five, ten, fifteen years." Carolyn Kost testified that there had been no County funds or maintenance on the road since she came into office in 1995.

Examination of the prior cases concerning abandonment of a road that is overgrown with timber and brush reveals that there was some evidence of minimal maintenance on the road where the roads were held not to have been abandoned. See *Faustlin*, 99 S.W.3d at 551 (noting that city or county personnel had serviced and maintained road as recently as few years before trial); *Taylor*, 666 S.W.2d at 857 ("All of the evidence was to the effect that from 1964 to 1981, the original route was . . . maintained as part of and in the same manner as the balance of the road" and "that maintenance was with public money."); *Seaton*, 633 S.W.2d at 213 (noting that road had been "regularly maintained" by county in past but had "since deteriorated but is still identifiable due to fences and bushes on either side of the 30 foot strip and some maintenance work done by one of the defendants"). Even in *Oetting*, which did not concern an overgrown road, and where there was no discussion of maintenance, the court did note that the road "was recognized as an existing public road [five years before the fence was

erected] by the county court." 175 S.W. at 224.

In the cases where the roads were held to have been abandoned, there was either affirmative evidence that no public funds had been spent on the road, *see Kleeman,* 167 S.W.3d at 204 (noting that road commissioner "stated that he was unable to find any records showing that public money had been expended on maintaining the disputed area"), or no evidence to suggest that public funds had been expended, *see Ankrom,* 126 S.W.3d at 802 (noting that maintenance by road district was sporadic and that "no evidence was offered that would suggest public money was spent on the road"). In the case at bar, several commissioners testified affirmatively that there were no records of any maintenance or public funds expended on the road at issue for anywhere from ten to twenty years prior to trial. The only evidence of any prior clearing activity was logging by the previous landowners, which is not maintenance. This points toward abandonment of the road.

Moving on to the most important part of the analysis, there was also substantial evidence that the road had not been used by the public for an extended amount of time. While we defer to the trial court's credibility determination concerning Donelson's claim of maintenance and use in the 1980s, we nevertheless must determine whether the judgment is against the weight of the evidence. *Harrison v. De-Heus,* 230 S.W.3d 68, 74 (Mo.App. S.D. 2007). In this case, the overwhelming weight of the evidence contradicts Donelson's claim that the road was maintained and he was able to use it for farming purposes in the 1980s. However, even deferring to the trial court's credibility determination on this issue, the weight of the evidence shows that the road was not maintained and that it became overgrown and was not used after the 1980s.

In addition to the testimony of Jack Smith, Mel Merrill, and Ronald Lumb concerning lack of maintenance, *see supra,* several witnesses testified that there had been no public use of the road. Willie Girdner testified that, in his lifetime of 31 years, he never saw the public use it "as a general road" or a "general access way from the gate back" to "drive their trucks or cars or vehicles, to go to the river, or any other purpose they might have." This is consistent with Burris's testimony that the road "wasn't being used" when he approached the Commission to "open" it and with the Smiths objecting to the bulldozing and claiming that the road had been abandoned. Kenneth Wilson testified that, to his knowledge, no one was using that area of the road "for any purpose" prior to this dispute. Mel Merrill also stated that he was not aware of any public use of the road since he moved back to Mercer County in 1996. Similarly, Rudy Finney testified that there was no information that the public had been using the road for at least five years before the bulldozing occurred. This evidence suggests that Donelson's recollection concerning maintenance and use is inaccurate.

The only evidence of any use whatsoever since the bridge went out in the 1950s, or after the late 1980s at the latest, was that Burbridge walked or drove a four-wheeler down the roadbed starting in 1994. However, Burbridge explained, "There was never a problem with the previous land owner and me coming across it . . . *as long as I was hunting.*" (Emphasis added.) He also stated that, shortly after the bulldozing occurred, Appellants let him have a lock on the gate to gain access to the road and gave him permission to cross the property on his four-wheeler but that his lock was removed after that time. Appellant Stack confirmed this, stating that he removed the lock when Burbridge did not respond to a letter indicating that he could

cross the road on a four-wheeler but that permission may be revoked at any time. This evidence suggests that Burbridge's use of the road was permissive for specified purposes and not as a member of the public. Permissive use points more toward abandonment of the road than to a public road. *Cf. Taylor,* 666 S.W.2d at 856 ("use of the road under conditions that would otherwise constitute trespass demonstrates the way was used as a public road and not permissibly"). The only other possible evidence of use was that Stack installed a gate at the end of the graveled portion of the road because neighboring landowners had seen people in the field with spotlights, but he did not say there had been any people in the wooded area.

Contrary to the trial court's findings and the implicit assumption in the majority's analysis, Burbridge's use of the road does not establish use by the "public." *Black's Law Dictionary* 1127 (6th ed.1990), defines "public" as:

> The whole body politic, or the *aggregate* of the citizens of a state, nation, or municipality. The inhabitants of a state, county, or community. In one sense, everybody, and accordingly the body of the people at large; the community at large, without reference to the geographical limits of an corporation like a city, town, or county; the people. In another sense the word does not mean all the people, nor most of the people, nor very many of the people of a place, but *so many of them as contradistinguishes them from a few.* Accordingly, it has been defined or employed as meaning *the inhabitants of a particular place; all the inhabitants of a particular place; the people of the neighborhood. Also, a part of the inhabitants of a community.*

(Emphasis added.) As stated in *Kleeman,* 167 S.W.3d at 206, courts must look at the behavior of neighboring landowners and "the public at large" to determine whether an area has been abandoned.[5]

In prior cases where roads that were overgrown with timber and brush were found not to have been abandoned, there was evidence of more than one person having used the road. *See Faustlin,* 99 S.W.3d at 550 (evidence "indicated that the public traditionally had access to and the right to make use of the roadway, however infrequent such travel may have occurred"; public use of road continued until obstructions were placed to block access; "tons of people" used road to dump fill nearby); *Taylor,* 666 S.W.2d at 855–56 (evidence showed that "alternate route was used ... in the same manner as the original route" based on landowner's testimony "that the public just took over"; road had been "crossed by people on foot, horseback and tractor" and "public use of the road ha[d] been primarily for launching boats, swimming and other recreational activities on the river"); *Seaton,* 633 S.W.2d at 215 ("There was testimony concerning sporadic use of the road between 1950 and 1978 by trustees, cemetery visitors, the caretaker, hunters, lovers and others."). Even in *Oetting,* the court reasoned that the trial court "did not find that the public *generally* had entirely ceased to travel this road" and that the road "was still used by the [neighboring landowner] *and the children who attended the school* situated on that road." 175 S.W. at 223 (emphasis added).

---

5. The majority attempts to distinguish *Kleeman* on this proposition because "the neighbors were not denied access to their land" since they accessed their land from the southern portion of the road and only the northern portion of the road was blocked. *Maj.* at 204. However, this does not affect the need to take into account use by all individuals in the "public," which is the standard under all cases concerning abandonment by nonuse, *see supra,* and which is merely stated more specifically in *Kleeman.*

In the case at bar, Burbridge's use of the road by four-wheeler since 1994 was the only evidence of any use since Donelson's claimed use in the late 1980s, and the overall import of Burbridge's evidence was that his use was permissive, *see supra.* As the majority notes, travel by means other than vehicles, including four-wheelers and foot traffic, may constitute public use. *See Seaton,* 633 S.W.2d at 215 (noting that there were "no cases stating that a road must be driven on, rather than walked upon in order to meet the requirement of use" (emphasis omitted)); *Taylor,* 666 S.W.2d at 855 (road had been "crossed by people on foot, horseback and tractor"); *Faustlin,* 99 S.W.3d at 549 (neighbors crossed road on four-wheelers); *Kleeman,* 167 S.W.3d at 204 (road was abandoned where it was "completely impassable to people and vehicles" and was "nearly impassable by foot or by horse"). However, there must still be use by the "public" and Burbridge alone does not constitute the "public." Contrary to the majority's conclusion, there was ample evidence that there had been no other public use of the road for at least five years continuously. Burbridge driving his four-wheeler across the property for hunting purposes does not negate the overwhelming evidence that the public was not using the road.

The majority mistakenly summarizes my argument to be that "there was no use by the 'public' because there was only evidence that the *respondents* used the road" and concludes that "use by *respondents* alone is sufficient to meet the use requirement." *Maj.* at 203–04 (emphasis added.) On the contrary, my point is that there was only evidence that Burbridge *alone* had used the road and that the overwhelming weight of the evidence was that no one else had used the road since, at the latest, Donelson's claimed use in the 1980s. Even inferring that Burbridge's use was not permissive, as the majority argues we must, he is still the only person who used the road for any purpose. Burris never claimed that he had used the road before bulldozing it; indeed, he admitted that the road "wasn't being used" when he approached the County to have it "reopened." All of the evidence was that Burbridge was the only person who had used the road in quite some time, which is insufficient to show use by the "public," sporadic or otherwise.

Accordingly, I believe the trial court's judgment that Appellants did not meet their burden to show that the road on their property had been abandoned pursuant to § 228.190 is against the weight of the evidence. I would reverse the trial court's judgment and remand the case for further proceedings consistent with the views expressed herein.